## Deoma v. Shaker Heights
*[Cite as 4 AOA 258]*

Case No. 57049
Cuyahoga County, (8th)
Decided June 7, 1990

Scott H. Ballou, Norman A. Fox, Jr., 1818 Standard Building, Cleveland, OH 44113, for Plaintiffs-Appellants.

Alan M. Petrov, Kathryn A. Kerka, 1501 Euclid Avenue, Sixth Floor, Bulkley Bldg., Cleveland, OH 44115, for Defendants-Appellees.

PATTON, C.J.

Plaintiffs-appellants, Joseph Deoma and Louis Narducci, appeal from a summary judgment rendered in favor of defendants City of Shaker Heights, its Mayor, Steve Alford, and its investigator, Ralph King.

The record discloses the following facts:

"[p]olice officers in Shaker Heights, Ohio would frequently undertake security work for the Shaker Heights School Board when off-duty to subsidize their incomes. It was standard practice for the school board to obtain the name of the officer who would work an event two weeks before its occurrence in order to requisition a check from the treasurer drafted in the name of the officer and to draft a contract and waiver form. Often an officer's schedule for police duties would conflict with the officer's commitment to the school board and another officer would then assume the security work for the school board's event. The check for the work would nevertheless be issued in the name of the officer originally assigned."

In August, 1984, Shaker Heights Mayor Steve Alford directed Ralph King, the city law department investigator, to conduct an independent investigation of the Shaker Heights police force on an anonymous tip that officers were working other jobs with the city at the same time they were working as police officers, i.e, "double-dipping." Mr. King instigated the investigation pursuant to the mayor's direction and conducted

it without involvement from the police department.

As a result of the investigation, appellants Deoma and Narducci were indicted for forgery and theft. At their trials, following the state's case, both Deoma and Narducci were acquitted. Thereafter, appellants filed a complaint against the appellees for malicious prosecution, wrongful discharge, defamation, infliction of emotional distress, and damages under Section 1983, Title 42, U.S. Code. The court rendered summary judgment in favor of appellees on all grounds. Appellants' six assigned errors are interrelated and will be discussed jointly. In these assignments, appellants contest the summary judgment.

## I.

In deciding whether the trial court correctly granted summary judgment, this court must follow Civ. R. 56 and view the record in the light most favorable to the nonmoving party. *Williams v. First United Church of Christ* (1974), 37 Ohio St. 2d 150. The burden of establishing that the material facts are not in dispute, and that no genuine issue of facts exists, it on the party moving for summary judgment. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64. The inferences to be drawn from the underlying facts contained in the depositions, affidavits and exhibits must be construed in the opposing party's favor. When so construed, the motion must be overruled if reasonable minds could find for the party opposing the motion. *Hounshell* v. *American States Ins. Co.* (1981), 67 Ohio St. 2d 427, 437; *Kunkler* v. *Goodyear Tire & Rubber Co.* (1988), 36 Ohio St. 3d 135, 138. However, in that Civ. R. 56(E) requires that a party set forth specific facts showing that there is a genuine issue for trial, such party must so perform if it is to avoid summary judgment. *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, paragraph seven of the syllabus.

### A. *MALICIOUS PROSECUTION*

In order to state a cause of action for malicious prosecution in Ohio, four essential elements must be alleged by the plaintiff: "(1) malicious institution of prior proceedings against the plaintiff by defendant;

"(2) lack of probable cause for the filing of the prior lawsuit;

"(3) termination of the prior proceedings in plaintiff's favor; and

"(4) seizure of plaintiff's person or property during the course of the prior proceedings. *Crawford* v. *Euclid Natl. Bank* (1985), 19 Ohio St.

3d 135, 139; *Kelly* v. *Whiting* (1985), 17 Ohio St. 3d 91, 94; *Woyezynski* v. *Wolf* (1983), 11 Ohio App. 3d 226, 227. See *Hawley* v. *Ritley* (1988), 35 Ohio St. 3d 157, 161.

Appellants assert that there is a question of fact as to whether there was probable cause to initiate the criminal charges against them. Probable cause exists when a defendant had a reasonable ground of belief, supported by trustworthy information and circumstances known to the defendant which would be sufficiently strong to cause a reasonable careful person, under similar circumstances, to believe that the prior proceedings and method of presenting the action were reasonable and lawful. *Melanowski, supra,* citing *Ash* v. *Marlow* (1851), 20 Ohio 119; *Donohoe* v. *Burd* (S.D. Ohio 1989), 722 F. Supp. 1507, 1517; *Portis* v. *Trans Ohio Savings Bank* (1988), 46 Ohio App. 3d 69, paragraph one of the syllabus. There is no requirement that the defendant must have evidence that will insure a conviction. *Epling* v. *Express Co.* (1977), 55 Ohio App. 2d 59, 62.

The return of an indictment by the grand jury is evidence of probable cause; when an indictment has been returned by the grand jury, the plaintiff has the burden of producing substantial evidence to establish lack of probable cause. *Id.; Donohoe, supra; Adamson, supra,* at 268. Plaintiff must produce evidence to the effect that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular. *Id.* We find that appellants Deoma and Narducci failed to meet this burden.

The parties agree that it was standard practice for the school board to obtain the name of the officers who would work an event two weeks before its occurrence. Often the assigned officer was unable to work the event as scheduled. The check for the work would nevertheless be issued in the name of the officer originally assigned. However, appellees argue that appellants alleged improprieties exceeded the standard practice.

On the basis of the information given by King, the prosecutor's office submitted the case to the Cuyahoga County Grand Jury. In February 1985, appellants were indicted for forgery and theft.

King's investigation revealed that Deoma was in charge of assigning officers to work night building security for the schools. Deoma often filled in the school time cards for the officers. Deoma placed extra hours on the time cards of

several officers; hours that they did not work. The officers returned the excess money from their paychecks to Deoma. Deoma also signed officers names to blank time cards and submitted hours for his personal overtime to the city for the same days that he was working for the school board, supposedly while off duty. Further, Deoma's lie detector test showed that he gave deceptive answers to questions regarding whether he had falsified time cards or had fraudulently obtained any money from the school board. We note that although lie detector tests are not admissible into evidence, they may be sued to establish probable cause to initiate a criminal action.

King's investigation revealed that Narducci had signed employment contracts in the name of Officer Daniel Velardo for school board work. Checks bearing Velardo's name as payee were then issued to, endorsed by, and cashed by Narducci. Velardo did not authorize Narducci to use his name or negotiate checks payable to him, and knew nothing of Narducci's conduct.[1]

We find that these undisputed facts gave rise to probable cause to institute criminal charges. Further, although *Prince* v. *City of Shaker Heights* (Apr. 20, 1989), Cuyahoga App. No. 54397, unreported, is related to this case, it is factually distinguishable. *Prince* essentially involves the standard procedure which we previously referred to. In *Prince*, the school board was given the name of Officer Eden as the security officer who would work a scheduled event. Accordingly, Jim Eden's name appeared on the check although Officer Prince actually worked at the event. When King interviewed Eden, he learned that Eden knew that Prince had endorsed the check as Jim Eden. Moreover, at a point weeks before the start of Prince's criminal trial, King was told by Officer Johnston and later by Eden that Prince was not guilty of criminal conduct. Both Johnston and Eden unsuccessfully tried to supply the information to King, who refused to consider the information. In the instant case, neither appellant presented any exculpatory information prior to the commencement of their trials. As to Deoma, no one came forward to proclaim Deoma's innocence. As to Narducci, Velardo never knew that Narducci had signed Velardo's name to employment contracts and checks.

Accordingly, the court properly rendered summary judgment in favor of appellees on appellants' malicious prosecution claim.

## B. *WRONGFUL DISCHARGE*

Appellants Deoma and Narducci claim that an issue of fact exists as to whether their resignations were forced upon them and, therefore, they were constructively discharged without just cause. Appellants essentially claim that their constructive discharge resulted from the criminal investigation which had been conducted against them.

Appellants rely of federal decisions to support their position. Generally, an employee is constructively discharged "when the employer makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." See *Wolf* v. *Westinghouse Electric Corp.* (Nov. 8, 1984), Logan App. No. 8-83-21, unreported, at 8. The federal cases cited by appellants which apply this definition are inapposite to the issues presented in this case because they involve suits for sex and age discrimination and sexual harassment. Further, even if these cases were applicable, there is no evidence of intolerable working conditions, harassment or disparate treatment. *Id.* Nor is there evidence of "heavy-handed, churlish conduct on the part of the * * * [employer] in inducing appellants to submit [their resignations]." *Carlos De La Torre* v. *Cleveland Board of Education, et al.* (May 16, 1985), Cuyahoga App. No. 49112, unreported, at 11, citing *Kinney* v. *Dept. of Admin. Services* (1984), 14 Ohio App. 3d 33, 35. Appellants admit that they resigned on the advice of their attorney and not because any of the appellees had told them to. Appellants were advised that their pension rights would be protected if they resigned, even if they were convicted of criminal charges following their resignations. Essentially, appellants admit that their resignations were a tactical move on their part to protect their interests. Thus, material facts are not in dispute as to whether appellants were constructively discharged.

## C. *DAMAGES UNDER §1983, TITLE 42, U.S. CODE*

Appellants contend that an issue of fact exists as to whether appellees are liable pursuant to Section 1983, Title 42, U.S. Code, for denying appellants' due process rights by forcing appellants to resign by reason of constructive discharge.

Section 1983 reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Appellants' claims under Section 1983 fall within the jurisdiction of the Court of Common Pleas because that court is one of original and general jurisdiction (Section 4, Article IV, Ohio Constitution; R.C. 2305.01) and because Congress allowed suits under Section 1983 to be brought in state courts as well as in federal courts. *Jackson* v. *Kurtz* (1979), 65 Ohio App. 2d 152, 156.

"It is well established that, in the context of terminations of employment to public employees, there is no constitutional requirement of a hearing and there is no federal right of action under Section 1983 unless the plaintiff had a 'property' or "liberty" interest in his employment status. *Northrop* v. *Kirby* (N.D. Ala. 1978), 454 F. Supp. 698, 701, citing *Bishop* v. *Wood* (1976), 426 U.S. 341.

### 1. *JOSEPH DEOMA*

Appellant Deoma was a classified civil servant. A classified civil servant has a property right in continued employment, which right is protected by the Due Process Clause of the Fourteenth Amendment. *Seltzer* v. *Cuyahoga Cty. Dept. of Human Serv.* (1987), 38 Ohio App. 3d 121, paragraph one of the syllabus; R.C. 124.11 and 124.34. A classified civil servant *who is about to be discharged* is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to be head before he is discharged, coupled with post-termination administrative procedures as provided by R.C. 124.34 (emphasis added). Id., at paragraph two of the syllabus; *Cleveland Bd. of Educ.* v. *Loudermill* (1985), 470 U.S. 532, 546. However, in this case Deoma waived his due process rights.

It is undisputed that after Deoma took a lie detector test he resigned. This was before any disciplinary action had been taken against him. Further, Deoma's argument that he was actually terminated due to the alleged constructive discharge and, therefore, entitled to a hearing lacks merit. As previously discussed, Deoma's situation does not fit the pattern of constructive discharge cases. In those cases, employers are charged with creating such intolerable working conditions that the employee is forced to quit as an alternative to ceasing protected activities. *Hoffman* v. *McNamara* (D. Conn. 1986), 630 F.

Supp. 1257, 1266. Deoma was not faced with continuing employment on unlawful terms, but rather he resigned to protect his pension rights and to avoid possible criminal prosecution.

Accordingly, summary judgment was properly rendered for appellees on Deoma's Section 1983 claim.

### 2. *LOUIS NARDUCCI*

Appellant Narducci was an unclassified civil servant. An unclassified employee is appointed at the discretion of the appointing authority, accrues no tenure, and serves at the pleasure of the appointing authority. He can be dismissed from his position without cause absent any discrimination or malfeasance. *Eudela* v. *Ohio Dept. of Mental Health & Mental Retardation* (1986), 30 Ohio App. 3d 113, paragraph one of the syllabus. However, Narducci contends that there is a question of fact as to whether he was denied his Due Process rights because he had a liberty interest in his public employment. In reaching this decision we need not determine whether there is a question of fact as to the existence of Narducci's claimed liberty interest. Rather, we need only determine whether there is a question of fact as to whether Narducci was denied possible due process rights. We find no such question exists.

It is undisputed that on November 13, 1984 appellees sent a letter to Narducci notifying him that a disciplinary hearing for Narducci regarding his alleged misconduct had been scheduled for November 19, 1984. The letter informed Narducci of the charges against him. However, on November 19, 1984 Narducci resigned and, consequently, the hearing did not take place. Thus, Narducci waived any possible due process rights to which he may have been entitled.

Accordingly, summary judgment was properly rendered for appellee on Narducci's Section 1983 claim.

### D. *DEFAMATION*

Appellants argue that a question of fact exists as to whether appellee Mayor Alford made two defamatory statements regarding appellants' guilt after they had been acquitted of the 'double-dipping' charges. This argument poses a single question: Did appellants present evidence sufficient to withstand appellees' motion for summary judgment on the issue of actual malice? We find that they did not.

Appellants Deoma and Narducci, as police officers, were public officials. *Mueller* v. *Storer Communications* (Mar. 31, 1988), Cuyahoga App. No. 54395, unreported, at 3. As such, appellants

bear the burden of proving, with convincing clarity, that appellee made the statements with actual malice. *Id.; New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254, 279-280; *Varanese* v. *Gall* (1988), 35 Ohio St. 3d 78, 79; *Bukky* v. *Printing Co.* (1981), 68 Ohio St. 2d 45, syllabus; *Dupler* v. *Mansfield* (1980), 64 Ohio St. 2d 116, syllabus. Our initial inquiry, therefore, must focus on what constitutes actual malice in defamation cases.

"The concept of actual malice in defamation cases involving public officials is separate and distinct from the traditionally defined common-law standard of malice or actual malice. Actual malice in the context of defamation may not be inferred from evidence of personal spite, ill will, or deliberate intention to injure, as the defendant's motives for publishing are irrelevant. A defamation plaintiff who is required to show actual malice must demonstrate, with convincing clarity, that the defendant published the defamatory statement either with actual knowledge that the statement was false, or with a high degree of awareness of its probable falsity. *Varanese, supra,* at paragraph one of the syllabus. Thus, a defamation plaintiff who is a public official has a stricter burden to prove that false statements were made with "actual malice." *Scott* v. *News-Herald* (1986), 25 Ohio St. 3d 243, 248.

Further, in *Costanzo* v. *Gaul* (1980), 62 Ohio St. 2d 106, at 108-111, the court explained:

"Privilege in the law of defamation recognizes certain communications as not being within the rules imposing liability for defamation. A privileged communication is one which, except for the occasion on which or the circumstances under which it is made, would be defamatory, and actionable. The defense of privilege is a matter of public policy in furtherance of the right of free speech. See 50 American Jurisprudence 2d 695, Libel and Slander, Section 192.

"Privileged communications are divided into two general classes--those which are absolutely privileged, and those which are qualifiedly or conditionally privileged. The basic difference between the two as generally stated is that complete protection is afforded by absolute privilege, whereas a qualified or conditional privilege affords protection only in the absence of ill motive or malice in fact. *Id.* at page 696.

"* * *

"A qualified privilege protecting the making of defamatory statements is exceeded when the statements are made with 'actual malice,' that is, with knowledge that the statements were false or with reckless disregard of whether they were false or not. *Hahn* v. Kotler (1975), 43 Ohio St. 2d 237, paragraph two of the syllabus.

Applying the above law to the instant case, the evidence shows that appellee Alford was the mayor of the city of Shaker Heights and had responded to reporters questions concerning a matter (e.g., "double-dipping") which was reasonably within his mayoral duties. This established a qualified privilege for appellee. Further, appellee's affidavit supporting his summary judgment motion reads, in part, as follows:

"I made no statement regarding Messrs. Deoma and Narducci that I knew to be a false statement or which I doubted was true. I made no statement regarding the investigation with any sort of malice or ill-will toward anyone." In response, appellants failed to support their brief in opposition with facts sufficient to defeat a summary judgment motion. Appellants rested upon the mere allegations of their pleadings and did not set forth specific facts showing that there was a genuine issue for trial regarding "actual malice." Civ. R. 56(C) and (E); *Van Fossen, supra; Bukky, supra,* at 47; *Widok* v. *Ford Motor Co.* (Apr. 21, 1988), Cuyahoga App. No. 53635, unreported, at 7; *Kucinich* v. *The Call & Post* (Dec. 12, 1985), Cuyahoga App. No. 49870, unreported.

Accordingly, we find that this case raises no genuine issue of material fact based on the evidence from which a reasonable jury could find actual malice with convincing clarity.

### E. *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

Appellants contend that the court erred in granting summary judgment on their claims for intentional infliction of emotional distress since an issue of fact exists as to whether appellant's distress was caused by appellees' investigation of the "double-dipping." This contention is without merit.

This court in *Pyle* v. *Pyle* (1983), 11 Ohio App. 3d 31, held:

"In order to recover damages for the intentional infliction of serious emotional distress four elements must be proved: a) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; b) that the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; c) that the actor's actions were the proximate cause

of the plaintiff's psychic injury; and d) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it."

In reaching our decision in this case, we need only to focus our inquiry upon the second element of *Pyle, supra,* namely, whether appellees' alleged culpable conduct was extreme and outrageous, beyond all bounds of decency and considered intolerable in a civilized community. A municipality's investigation of alleged corruption within its police department does not qualify as such conduct. Hence, no outrageous behavior by appellees was established. This assigned error is overruled.

*Judgment affirmed.*

SWEENEY, J., and STILLMAN, J., concur.

Sitting by Assignment: Saul G. Stillman, retired judge of Court of Appeals of Ohio, Eighth Appellate District.

---

[1] We note that appellees argue that Narducci's alleged improprieties differed from the school board's standard practice of issuing checks in the name of officers who were originally assigned for work regardless of which officer actually performed the work and that Narducci used Velardo's name to avoid taxes.