Plaintiff-appellant Joseph D. Scarso ("Scarso") appeals from the decision of the trial court granting summary judgment in this malicious prosecution action in favor of defendants-appellees Village of Mayfield, Village of Mayfield Chief of Police Donald Stevens, Village of Mayfield Police Sergeants Donald Smith and David Liggett, and Village of Mayfield Police Department Dispatcher Kathryn Tomaro. For the reasons adduced below, we affirm.
A review of the record on appeal indicates that Scarso, an officer with seven years of service with the Village of Mayfield Police Department, was arrested in the early morning hours of Monday, June 15, 1993, by the Mayfield Heights Police Department on a charge of criminal mischief relating to the slashing of tires on an automobile owned by Scarso's former girlfriend, Lisa Calvo. Scarso was convicted by a jury on the offense of criminal mischief in violation of Mayfield Hts. Ordinance 541.11. This conviction was affirmed in City of Mayfield Heights v. Scarso
(Apr. 18, 1996), Cuyahoga App. No. 69115, unreported, 1996 WL 191773. The record also indicates that Scarso was terminated as an officer by the Village of Mayfield.[1]
During the investigation of the matter by Sergeants Smith and Liggett, Dispatcher Tomaro volunteered information to the investigators that Scarso, while off-duty on June 13, 1993, contacted Tomaro at approximately 11:15 p.m. via telephone requesting that she run a LEADS computer check on Ohio vehicle license plate number KMH 283 and a computer check on the social security number of the registered owner of that vehicle.[2]
Tomaro indicated to the investigators that the LEADS information reflected that the vehicle accompanying the license plate number, a 1981 Toyota, was registered to Scott E. Lowy who lived on Genesse Road in Euclid, Ohio. Tomaro was suspicious about the request because she had seen Scarso's former girlfriend, Lisa Calvo, earlier that Saturday night with another man (Scott Lowy) at a local "50's Cruise Night" before she came on duty.[3] The officers believed that this computer request by Scarso may have been a violation of Village of Mayfield Police Department rules and a violation of rules governing access to LEADS. In response to this information by Tomaro, Sergeant Smith obtained a computer audit from LEADS of system inquiries relating to the license plate number in question from June 11 through June 13, 1993.
This audit confirmed that an inquiry concerning the license plate number in question had been logged at 11:10 p.m. on June 12, 1993 from the Village of Mayfield Police Department. This information was consistent with the information obtained from Tomaro. In addition to this Village of Mayfield LEADS inquiry, the audit also indicated that LEADS inquiries were logged at two other times on June 12, 1993; once at 6:24 p.m. from the Willoughby Hills Police Department, and the other at 11:13 p.m. from the Richmond Heights Police Department. Subsequent investigation of these two other inquiries caused the officers to believe that the Willoughby Hills inquiry was legitimate due to an officer of that department making a check on the expired nature of the license plate, however the Richmond Heights inquiry was deemed to be suspicious. The investigators learned from Richmond Heights Police Sergeant Richard Walko that Scarso had come to the Richmond Heights Police Department on June 12, 1993, shortly after 11:00 p.m., claiming that he had been involved in a hit-skip vehicle accident. Scarso requested that Sergeant Walko perform a LEADS check on a particular license plate number. Walko obtained the information from LEADS and told Scarso the details of that information.
The investigators turned this information over to the Cuyahoga County Prosecutor, who in turn presented the matter to the Grand Jury, which returned a two-count indictment against Scarso on May 3, 1994, for the unauthorized use of LEADS and the CRIS network in violation of R.C. 2913.04(B). See State v. Scarso, Cuyahoga County Criminal Case No. CR-309990. These two charges were disposed of on November 30, 1994, when the trial court (former Judge Michael Gallagher), finding that Scarso had gained access to the computer systems with the consent of the owner albeit through deception, granted a defense motion for acquittal pursuant to Crim.R. 29.
The lone assignment of error provides:
 WHETHER OR NOT THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT FOR THE DEFENDANTS-APPELLEES AND AGAINST THE PLAINTIFF-APPELLANT.
The standard of review for a motion for summary judgment was generally stated in State ex rel. Zimmerman v. Tompkins (1996),75 Ohio St.3d 447, 448-449, as follows:
 Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.
* * *
 Summary judgment is appropriate where the nonmoving party does not produce evidence on any issue for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus; State ex rel. Morley v. Lordi
(1995), 72 Ohio St.3d 510, 513, 651 N.E.2d 937, 940. When a motion for summary judgment is made and supported as provided in Civ.R. 56, the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine triable issue. Civ.R. 56(E); Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031. (Emphasis added.)
Also see Celotex v. Catrett (1986), 477 U.S. 317, 106 S.Ct. 2548,91 L.Ed.2d 265.
Subsequent to Tompkins, in the case of Kulch v. StructuralFibers, Inc. (1997), 78 Ohio St.3d 134, 144-145, the Ohio Supreme Court limited the third paragraph of the syllabus of Wing, supra,
by reasserting reliance on Dresher v. Burt (1996), 75 Ohio St.3d 280,293:
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Footnote omitted; Italicization in original.)
In order to prove the tort of malicious criminal prosecution, three elements must be demonstrated, namely:
 (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. Arrest of the plaintiff or seizure of his property is not a necessary element. (Rogers v. Barbera [1960], 170 Ohio St. 241, 10 O.O.2d 248, 164 N.E.2d 162, paragraph one of the syllabus, applied and followed; Kelly v. Whiting [1985], 17 Ohio St.3d 91, 17 OBR 213, 477 N.E.2d 1123, and Crawford v. Euclid Natl. Bank [1985], 19 Ohio St.3d 135, 19 OBR 341, 483 N.E.2d 1168, modified.)
Trussell v. General Motors Corp. (1990), 53 Ohio St.3d 142, syllabus.
As provided in Carlton v. Davisson (1995), 104 Ohio App.3d 636,650-651:
 An indictment is prima facie evidence of probable cause and a plaintiff must bring forward substantial evidence to rebut this. Deoma v. Shaker Hts. (1990), 68 Ohio App.3d 72, 77, 587 N.E.2d 425, 428; Epling v. Pacific Intermountain Express Co. (1977), 55 Ohio App.2d 59, 62, 9 O.O.3d 220, 222, 379 N.E.2d 239, 241-242; Lynch v. Medina Police Dept.
(July 28, 1993), Medina App. No. 2179-M, unreported, 1993 WL 280451; Bender v. Diemert
(Apr. 22, 1993), Cuyahoga App. No. 62206, unreported, 1993 WL 127091. This evidence must suggest the "indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular." Deoma v. Shaker Hts., 68 Ohio App.3d at 77, 587 N.E.2d at 428.
See also Pollock v. Kanter (Cuyahoga, 1990), 68 Ohio App.3d 673,680 (the fact that an indictment was issued raises a rebuttable presumption that probable cause existed to establish a claim for malicious prosecution)
Appellant argues, without authority, that the granting of the motion for acquittal in his felony proceeding vitiated the finding of probable cause to indict by the Grand Jury. Appellant's belief misconstrues the law. An indictment is a mere accusation, it indicates that the grand jury found probable cause to believe that appellant had committed the unauthorized use offense. State ex rel. Lipschutz v. Shoemaker (1990), 49 Ohio St.3d 88,90, 551 N.E.2d 160, 162. "Probable cause" has been defined to mean "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." Ash v. Marlow (1851),20 Ohio 119, 130. See, also, State v. Rose (1991), 75 Ohio App.3d 656, 600 N.E.2d 382; Rogers v. Barbera (1960), 170 Ohio St. 241, 10 O.O.2d 248, 164 N.E.2d 162; Melanowski v. Judy (1921),102 Ohio St. 153, 131 N.E. 360. The use of a motion for acquittal pursuant to Crim.R. 29 is to terminate a prosecution where the evidence is insufficient to sustain a conviction of the offense. The granting of a motion for acquittal is not to say that the Grand Jury lacked probable cause to indict based on no more than a preponderance of the evidence; instead, the granting of a motion for acquittal merely expresses the belief of the trial court that the evidence presented is insufficient to obtain a conviction beyond a reasonable doubt. Although not a formal assignment in this appeal, appellant has brought into question the propriety of the motion for acquittal ruling, as if the granting was proper and now serves as a shield from the probable cause element necessary for the cause of action for malicious prosecution. While a review of this motion ruling at this late date cannot undo its effect due to the time for appeal having long since passed, such a review is relevant to the arguments presented by appellant.
The trial court in appellant's felony proceeding used as a basis for the motion for acquittal ruling the fact that Dispatcher Tomaro and Sergeant Walko had consented to the use of the computer network by Scarso when Scarso allegedly asked them to run a check on the license plate number. Despite this outward consent in having acquiesced to Scarso's request, the offense may still be completed where the access to the computer was gained "beyond the scope of the express or implied consent" of the owner of the computer system. See R.C. 2913.04(B). This is precisely what Scarso accomplished in allegedly tricking his peers in the two police departments. He gained access to the police computer and such access, by virtue of its deceptive nature motivated by a desire to gain information on the new boyfriend of Ms. Calvo and not for legitimate police purposes (particularly in the count regarding accessing the Richmond Heights police computer based on an alleged hit-skip accident involving Scarso), was beyond the express or implied consent of the computer system owner which mandates that use of the computer system be for legitimate police business. Accordingly, although this is not to conclude that a conviction was a certainty based upon a "beyond the reasonable doubt" standard, the trial court in the felony prosecution erred in granting the motion for acquittal since the evidence was sufficient to obtain a conviction based on the argument that Scarso breached the express/implied consent of the computer owner.
In the record before us, there is no evidence, other than appellant's own self-serving accusations, to suggest that the indictment resulted from perjured testimony. Also, there is no indication that the grand jury proceeding itself was irregular.[4]
Being unable to demonstrate that probable cause was lacking, the action for malicious prosecution fails.
Assignment overruled.
Judgment affirmed
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
TERRENCE O'DONNELL, P.J., and LEO M. SPELLACY, J., CONCUR.
 ________________ JAMES D. SWEENEY JUDGE
[1] The Court takes judicial notice of the fact that Scarso's administrative appeal of his termination was concluded in favor of the Village of Mayfield on August 20, 1998 (Journal Vol. 2249, page 246), and that no appeal was taken from that final order. See Scarso v. Mayfield Village Civil Service Commission, Cuyahoga County Common Peas Court Case No. 336753.
[2] LEADS is an acronym for the Ohio Law Enforcement Automated Data System. The LEADS database system is accessed through the County Regional Information System, aka CRIS.
[3] Appellant admits in his appellate brief, at 1, that he "encountered his former girlfriend, Lisa Calvo, at a street fair" on June 12, 1993, and that Calvo was at that fair with her new boyfriend, Scott Lowy, who was the owner of the vehicle bearing license plate number KMH 283.
[4] The Grand Jury proceeding transcript is not in the record on appeal.