[Cite as *Lively v. Donald Dunning, D.D.S., Inc.*, 2013-Ohio-1350.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 98910

---

# REBECCA LIVELY

### PLAINTIFF-APPELLANT

vs.

# DONALD DUNNING, D.D.S., INC., ET AL.

### DEFENDANTS-APPELLEES

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-776200

**BEFORE:** S. Gallagher, P.J., Kilbane, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 4, 2013

**ATTORNEY FOR APPELLANT**

John J. Spellacy
1540 Leader Building
526 Superior Avenue
Cleveland, OH   44114


**ATTORNEYS FOR APPELLEES**

Roy A. Hulme
Michelle J. Sheehan
Reminger Co., L.P.A.
101 Prospect Avenue, West
Suite 1400
Cleveland, OH   44115

SEAN C. GALLAGHER, P.J.:

{¶1} Plaintiff-appellant, Rebecca Lively ("Lively"), appeals the trial court's decision that granted summary judgment in favor of defendants-appellees, Donald Dunning, D.D.S., Inc. ("the dental practice"), and Rosemary Dunning ("Rosemary"),[1] and dismissed her claims against them for malicious prosecution and intentional infliction of emotional distress.[2] For the reasons that follow, we reverse and remand for further proceedings.

{¶2} Rosemary and Donald Dunning ("Dunning") suspected Lively of stealing money from the dental practice where she worked as a receptionist for 17 years. They presented their suspicions to Parma Heights Police Detective Kunker, who investigated the claims and pursued criminal charges against Lively because of alleged discrepancies in the office's financial records. The detective found many of the incidents were not criminal in nature, with the exception of three patient accounts. Lively was eventually arrested and indicted for felony theft.

{¶3} Before trial, the bank reported an error, which accounted for $700 of the missing funds. However, $300 remained unaccounted for, and the criminal case against Lively proceeded to a bench trial. The trial court dismissed the elderly specification

---

[1] The dental practice, Donald Dunning, and Rosemary are collectively referred to in this opinion as the "Dunning defendants."

[2] The Court's order also dismissed Lively's claim for negligent infliction of emotional distress, but she does not challenge that determination in this appeal.

because of insufficient evidence but otherwise denied Lively's motion for acquittal pursuant to Crim.R. 29, finding there was sufficient evidence to proceed to a verdict. Ultimately, the court found Lively not guilty of the charge. Thereafter, Lively commenced this civil case against the Dunning defendants, which was dismissed upon the trial court's summary judgment determination.

{¶4} Lively presents two assignments of error and contends that the trial court erred by granting summary judgment to the Dunning defendants on her claims for malicious prosecution and intentional infliction of emotional distress. Lively maintains there are genuine issues of material fact as to both of these claims.

Summary Judgment Standard

{¶5} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.). Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that

> (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.

*State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶6} In accordance with this standard, the facts must be construed in a light most favorable to Lively when determining whether there are any genuine issues of material fact as to the elements of her malicious prosecution or intentional infliction of emotional distress claims.

Malicious Prosecution

{¶7} "The tort of malicious prosecution in a criminal setting requires proof of three essential elements: '(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.'" *Froehlich v. Ohio Dept. of Mental Health*, 114 Ohio St.3d 286, 2007-Ohio-4161, 871 N.E.2d 1159, ¶ 10, quoting *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 146, 559 N.E.2d 732 (1990). Malicious prosecution, in the criminal context, recognizes the right of a wrongfully accused person to recover damages that were suffered by them as a result of another person's misuse of the criminal justice system. *Trussell*, 53 Ohio St.3d at 144.

{¶8} A final order in favor of the accused by a trial court in a criminal proceeding satisfies the third element of a malicious prosecution claim. *Id*. at ¶ 13, 19, quoting Restatement of Law 2d, Torts (1977), Section 659. Lively asserts that the evidence satisfied this element, and the Dunning defendants do not dispute it.

{¶9} Lively further asserts that there are genuine issues whereby a reasonable mind could conclude that the Dunning defendants instituted the prosecution with malice and without probable cause. The Dunning defendants contend that Lively failed to establish a triable issue of fact as to either element.

{¶10} This court has noted:

> In an action for malicious prosecution, the lack of probable cause is the gist of the action. *Melanowski v. Judy* (1921), 102 Ohio St. 153, 131 N.E. 360, 19 Ohio L. Rep. 6. Probable cause does not depend on whether the claimant was guilty of the crime charged. *Waller v. Foxx* (Oct. 6, 1982), Hamilton App. No. 810568, 1982 Ohio App. LEXIS 12857. Rather, the question is whether the accuser had probable cause to believe that the claimant was guilty. Id. The person instituting the criminal proceeding is not bound to have evidence sufficient to insure a conviction but is required only to have evidence sufficient to justify an honest belief of the guilt of the accused. *Epling v. Pacific Intermountain Exp. Co.* (1977), 55 Ohio App.2d 59, 62, 379 N.E.2d 239.

*Pierce v. Woyma*, 8th Dist. No. 94037, 2010-Ohio-5590, ¶ 19.

{¶11} The criminal indictment by the grand jury created a rebuttable presumption of probable cause. *Deoma v. Shaker Hts.*, 68 Ohio App.3d 72, 77, 587 N.E.2d 425 (8th Dist.1990); *Epling*. However, this court has found that a malicious prosecution claim is not precluded just because an indictment was issued. *See Krieger v. Cleveland Indians Baseball Co.*, 176 Ohio App.3d 410, 2008-Ohio-2183, 892 N.E.2d 461 (8th Dist.), ¶ 56, 57, *rev'd on other grounds, Oliver v. Cleveland Indians Baseball Co. Ltd. Partnership*, 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205. "'If one party relies on a presumption and his adversary introduces evidence of a substantial nature which counter-balances the presumption, it disappears.'" *Id.* at ¶ 57, quoting, *Adamson v. May*

*Co.*, 8 Ohio App.3d 266, 270, 456 N.E.2d 1212 (8th Dist.1982). The evidence presented in this case, when construed in a light most favorable to Lively, creates a genuine issue of material fact as to whether the Dunning defendants instituted the criminal proceedings with malice and without probable cause.

{¶12} The police and the state were not privy to the acrimonious relationship among these parties and would have had no reason to question the veracity of the accusations lodged by the Dunning defendants against Lively. Therefore, the officers' advice concerning the theft offenses and the pursuit of the indictment from the grand jury by law enforcement is not in question. Similarly, the fact that the trial court denied Lively's motion for acquittal does not preclude the malicious prosecution claim against the Dunning defendants as a matter of law either. Our focus is not upon the conduct of the police and the state or the court's assessment of the evidence presented, but instead, we must examine the Dunning defendants' conduct in instigating the prosecution. Other cases have done the same. *E.g.*, *Rios v. The Grand Slam Grille*, 8th Dist. No. 75150, 1999 Ohio App. LEXIS 5448 (Nov. 18, 1999); *Brand v. Geissbuhler*, 8th Dist. No. 70565, 1997 Ohio App. LEXIS 709 (Feb. 27, 1997) ("The determination of whether a criminal prosecution was undertaken in the absence of probable cause entails an inquiry into the facts or circumstances actually known to or which were reasonably within the contemplation of the defendant at the time of the instigation of criminal proceedings.")

{¶13} In *Melanowski v. Judy*, 102 Ohio St. 153, 156, 131 N.E. 360 (1921), the Ohio Supreme Court held:

In determining whether the defendant, in instituting the criminal proceeding, acted without probable cause, his conduct should be weighed in view of his situation at the time, and of the facts and circumstances which he knew or was reasonably chargeable with knowing when the proceedings were instituted.

**{¶14}** The element of malice can be either express or implied.

Actual or express malice is that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation or a determination to vent his feelings upon other persons. * * * Malice sufficient to sustain an action for malicious prosecution may be inferred from the circumstances of the case, and from the proof of wrongful acts intentionally done without just cause.

*Gibson v. Trego*, 11th Dist. No. 888, 1979 Ohio App. LEXIS 11887 (May 21, 1979).

**{¶15}** Dunning testified that he raised Lively as if she were his own daughter since she was approximately five years old.[3] It is undisputed that Lively was employed by Dunning's dental practice for 17 years. Lively worked at the front desk and testified that her job included receiving cash payments from clients and depositing them in the bank.

**{¶16}** There is an inference of ill-will and malice toward Lively in the record, as well as a possibility that criminal charges were instigated in the spirit of revenge or retaliation. Before Dunning went to the police, Lively had made certain allegations against him that could have jeopardized his license. Lively had also accused him of lying to patients and covering up substance abuse issues. Dunning denies the truth of these allegations but does not deny that they were made by Lively.

---

[3] Dunning was married to, but is now divorced from, Lively's mother. Dunning later married Rosemary. Lively is no longer Dunning's stepdaughter, and Lively is not related to Rosemary.

**{¶17}** During her employment at the dental office, Lively had medical issues that required periods of hospitalization. While Lively was absent from work, Dunning claims they found some "misfilings, some insurance claims that hadn't been sent out, and a number of financial things that should have been attended to. And I told her to do that."

**{¶18}** When Lively returned to work, Dunning reassigned her to a dental assistant position. Rosemary took over the front desk duties. Lively felt physically unable to perform the dental assistant position and quit. Although Lively gave Dunning two weeks' notice, he immediately changed the office locks without telling Lively. Lively said she could not get into the office and, therefore, could not return to work. After Lively quit, Dunning and Rosemary reviewed the dental practice records and allegedly found discrepancies in the cash receipts and bank deposits, among other losses. Dunning acknowledges that Lively was never accused of stealing any money in her 17-year work history and the subject allegations arose months after she left his employment.

**{¶19}** Dunning has not spoken to Lively since her resignation. He maintains that he bears no ill-will toward her but has no reason to speak to her anymore. Dunning also successfully prevented Lively's claim for unemployment compensation.

**{¶20}** Dunning and Rosemary communicated their suspicions that Lively had stolen money from the dental practice to Parma Heights Police Detective Kunker. They did not make any attempt to address their concerns with Lively before doing so. They presented the police with numerous allegations of theft; however, Det. Kunker noted that "Many of the issues are poor work and do not appear to be criminal in nature but a few appear to be

criminal." The record denotes that Dunning took away the office computers in 2006 and all of the financial records were kept by hand thereafter. Dunning further admitted that he, Rosemary, and Lively would all make cash deposits. Although Dunning stated he would have dropped the matter if Det. Kunker found no evidence of criminal activity, he was intent on pursuing any criminal charges that he possibly could against her.

{¶21} Detective Kunker testified that Dunning and Rosemary presented him with eight items of concern, which he investigated. He deemed two incidents to be clerical errors, and of the remaining six incidents, only three were the subject of the felony theft charge against Lively. In one instance, a patient had paid $140, but only $120 was reportedly deposited; in another instance, a patient had paid $300, and only $20 was reportedly deposited; and in a third instance, a patient paid $700, and nothing was reportedly deposited. The police arrested Lively on a holiday weekend, and she spent at least four days in jail. Lively said she had difficulty maintaining and obtaining employment following her separation from the dental practice and her subsequent incarceration.

{¶22} There is evidence in the record that Dunning had access to the cash kept in the office and that he had used it in the past for his own purposes, such as lunches.[4] Dunning denied ever using the cash and maintained it was always deposited in the bank. Rosemary worked at the office and also had access to the cash. The office records were poorly kept, a fact that was noted by the investigating officer.

---

[4] This testimony came from Lively's brother.

{¶23} Det. Kunker said he was the only one who testified before the grand jury and admits that some of the information he presented to the grand jury was later found to be wrong. Specifically, the bank notified him, after Lively had already been indicted, that it had made an error with regard to $700 that was allegedly missing, but which was, in fact, deposited into the dental practice's bank account. Lively maintains the presentation of this incorrect evidence to the grand jury should be attributed to the Dunning defendants and argues that they supplied the information without actually believing its truth and did so maliciously. Lively further maintains that but for the provision of this information to the grand jury, she would not have been indicted.

{¶24} The Dunning defendants maintain that the indictment would have issued regardless based upon the two remaining incidents of alleged theft that proceeded to trial, totaling $20.00 and $280.00 respectively. Our focus is directed to ascertaining from this record what facts and circumstances the Dunning defendants knew or were reasonably chargeable with knowing when the proceedings were instituted. Ultimately, the criminal trial judge found Lively not guilty and observed, "There are many explanations as to what could have happened to this money. The Court doesn't need to speculate on any of them. It just finds it somewhat disappointing that we're here in court today." The reasoning employed by the court in reaching its verdict referenced the parties' long-time personal relationship, which had ended in "such a destructive manner." The court found a lack of any pattern of embezzlement. The court noted there were "no other allegations of theft against [Lively] during her long multi-year tenure handling the finances of this dental

office" and that none of the allegations were lodged until four months after she left her position.

**{¶25}** When the appropriate tests and standard of review are applied, Lively presented enough evidence to create a triable issue on her malicious prosecution claim. Certainly a jury could resolve this claim in the Dunning defendants' favor, but the record evidence provides enough grounds for the claim to survive summary judgment. Again, the evidence at this stage must be construed in a light most favorable to Lively pursuant to Civ.R. 56. Accordingly, the appellees' motions for summary judgment on the malicious prosecution claim should have been denied.

Intentional Infliction of Emotional Distress

**{¶26}** To establish a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant intended to cause the plaintiff serious emotional distress; (2) the defendant's conduct was extreme and outrageous; and (3) the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Pierce*, 2012-Ohio-3947, ¶ 26, citing *Phung v. Waste Mgt. Inc.*, 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994).

**{¶27}** Lively contends that genuine issues of material fact exist on this claim because she believes that the Dunning defendants' conduct in reporting their suspicions about her to police was extreme and outrageous under the circumstances. The "extreme and outrageous" conduct standard is high.

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress,

or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "outrageous!"

*Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 6 Ohio St.3d 369, 372, 374-375, 453 N.E.2d 666 (1983), quoting Restatement of the Law 2d, Torts, Section 46, Comment d (1965).

{¶28} Initiating a police report and cooperating with a police investigation is not considered the type of outrageous conduct that would support an intentional infliction of emotional distress claim. *E.g.*, *Matthias v. Wendy's*, 8th Dist. No. 71721, 1997 Ohio App. LEXIS 4227 (Sept. 18, 1997).

{¶29} Lively again asserts that the evidence clearly did not support the charges against her and maintains that the factual circumstances of this case establish an intentional infliction of emotional distress claim. Lively worked for the dental practice for 17 years and became Dunning's stepdaughter at a very young age. The Dunning defendants were aware of Lively's medical condition, had a familial-type relationship with her, knew the condition of the office records and that other people had access to the office cash, but they pursued criminal charges against her regardless. Furthermore, Lively was arrested and spent at least four days in jail. She stated that she lost her alternative employment as a consequence and that she had difficulty obtaining other gainful

employment as a result of the criminal charges. Her claim for unemployment compensation was opposed by Dunning and ultimately denied. Whether this constitutes "extreme and outrageous" conduct cannot be determined as a matter of law, particularly when there are material issues of fact as to whether appellees lacked probable cause to initiate the criminal proceedings against Lively.

{¶30} Because the evidence must be construed in a light most favorable to Lively, there is enough in the record to create a genuine issue of material fact on this claim as well. However, we note that there is contrary evidence in the record that is favorable to the Dunning defendants and that this claim could also ultimately be resolved in their favor.

{¶31} For the above reasons, the trial court erred by granting appellees' motion for summary judgment, and both assignments of error are sustained.

{¶32} Judgment reversed and remanded for further proceedings.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and

EILEEN T. GALLAGHER, J., CONCUR