**WATERSON, Appellant,**

v.

**CLEVELAND STATE UNIVERSITY, Appellee.**

[Cite as *Waterson v. Cleveland State Univ.* (1994), 93 Ohio App.3d 792.]

Court of Appeals of Ohio,
Franklin County.

No. 93API09–1348.

Decided March 29, 1994.

*Nicholas M. DeVito & Associates, Nicholas M. DeVito* and *Christopher D. Kuebler,* for appellant.

*Lee Fisher,* Attorney General, and *Catherine M. Cola,* Assistant Attorney General, for appellee.

PEGGY BRYANT, Judge.

Plaintiff-appellant, Bill Waterson, appeals from a judgment of the Ohio Court of Claims dismissing his defamation action against defendant-appellee, Cleveland State University ("CSU").

Plaintiff's case arises out of an editorial published in the October 10–23, 1991 issue of a CSU student newspaper known as *The Vindicator.* The editorial was written by the then-student editor-in-chief of *The Vindicator,* Zina Quarles ("Quarles"). The editorial stated that plaintiff, a high-ranking official in the CSU police department, had a reputation for using excessive force, and it recounted several incidents of racist and homophobic behavior allegedly committed by plaintiff.

On March 3, 1992, plaintiff filed a complaint in the Ohio Court of Claims alleging defamation, slander, tortious interference with his employment contract, and intentional infliction of emotional distress in connection with the editorial which appeared in *The Vindicator.* The complaint named CSU, among others,[1] as defendant in the case. Plaintiff amended his complaint on February 17, 1993, deleting the claim for slander and adding a claim for negligence.

---

1. Plaintiff's complaint also named *The Vindicator,* Zina Quarles, CSU police officer Hurdis Hildreth, and Frank Adams, the faculty advisor to *The Vindicator,* as defendants. However, these defendants were dismissed by the trial court pursuant to R.C. 2743.02(E) in its pre-screening entry of March 6, 1992.

On June 28, 1993, defendant filed a motion for partial summary judgment on the issue of whether plaintiff was a "public official" within the meaning of *New York Times v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. The trial court issued a decision on August 4, 1993, in which it concluded that plaintiff's employment as a police officer rendered him a "public official" as a matter of law. On August 30, 1993, the case went to trial on the remaining issues. At the close of plaintiff's case, defendant moved for an involuntary dismissal pursuant to Civ.R. 41(B)(2). On August 31, 1993, the trial court issued a decision sustaining defendant's motion and dismissing the case with prejudice on the grounds that plaintiff had not sustained his burden of proof. Plaintiff appeals, assigning the following errors:

"1. The trial court erred in holding that the appellant was a 'public figure'.

"2. The trial court erred in finding that the appellee's conduct was not so outrageous and reckless as to constitute 'actual malice' within the meaning of *New York Times.*

"3. The trial court erred in granting the appellee's motion for directed verdict on the basis that the appellant was not defamed within the meaning of *New York Times.*

"4. The trial court erred in finding that the appellee was not permitted to withhold publication of the defamatory article and that the appellee was not negligent for allowing the publication of the defamatory article."

█ In his first assignment of error, plaintiff challenges the trial court's application of the "actual malice" standard to this case, arguing that he was not a "public figure" when the editorial in question was published.

Preliminarily, plaintiff's argument misapprehends the basis for the trial court's application of the actual malice standard to his claims. In *New York Times* and *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, the United States Supreme Court held that both "public officials" and "public figures" must prove actual malice in the publication of a defamatory statement in order to prevail in an action for defamation. *New York Times, supra,* 376 U.S. at 280, 84 S.Ct. at 726, 11 L.Ed.2d at 707; *Curtis Publishing, supra,* 388 U.S. at 163, 87 S.Ct. at 1996, 18 L.Ed.2d at 1116. Here, the trial court concluded that as a result of his position with the CSU police department, plaintiff was a public official under *New York Times* and its progeny, and thus was required to prove actual malice. The trial court did not address whether plaintiff was a "public figure" under the rule announced in *Curtis Publishing.* As a result, we will treat plaintiff's first assignment of error as alleging that the trial court erred in concluding that plaintiff was a "public official."

Whether an individual is a public official is a question of law to be determined by the trial court. *Rosenblatt v. Baer* (1966), 383 U.S. 75, 88, 86 S.Ct. 669, 677, 15 L.Ed.2d 597, 607. In reviewing the determination of the trial court, we are guided by the general proposition that where a person's "position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees * * *," the individual will be deemed to be a public official. *Id.*, 383 U.S. at 86, 86 S.Ct. at 676, 15 L.Ed.2d at 606. "The [government] employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in the controversy." *Id.* at fn. 13.

The public today has a significant interest in the performance of its law enforcement officers. "The abuse of a patrolman's office can have great potentiality for social harm * * *." *Coursey v. Greater Niles Twp. Publishing Corp.* (1968), 40 Ill.2d 257, 265, 239 N.E.2d 837, 841. Similarly, the students and faculty of CSU have a significant interest in the qualifications, performance and conduct of the officers of the CSU police department, as they rely on these officers for their campus security and are more likely to have day-to-day contact with them than with the officers of the greater Cleveland community.

Further, the interest of the campus community in any individual officer's performance is likely to increase with the authority and influence of the officer. At the time the editorial in question was published, plaintiff was Deputy Chief in the CSU police department. As Deputy Chief, plaintiff was second in command in the department, ranking only below the Chief of Police, and was responsible for the continued training of the approximately thirty officers on the force. Plaintiff thus was in a position to wield considerable influence over the rank and file members of the department and to set the tone within the department on issues such as the appropriate use of force and ethnic sensitivity.

Finally, the CSU community is the principal audience of the publication in which the editorial in question appeared, precisely the audience with the greatest interest in the performance of CSU police officers, including plaintiff.

Given the foregoing circumstances, plaintiff was a public official under the standard announced in *Rosenblatt*. *Bross v. Smith* (1992), 80 Ohio App.3d 246, 252, 608 N.E.2d 1175, 1180 ("[p]olice officers acting within the scope of their official capacity are public officials * * *"); *Deoma v. Shaker Hts.* (1990), 68 Ohio App.3d 72, 82, 587 N.E.2d 425, 431; *Mueller v. Storer Communications, Inc.* (1988), 46 Ohio App.3d 57, 58, 545 N.E.2d 1317, 1318; see, generally, Annotation (1968), 19 A.L.R.3d 1361, Section 5(d). Indeed, law enforcement officials will often be deemed to be public officials for purposes of the rule

announced in *New York Times, supra.* See *Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 520 N.E.2d 198 (county sheriff's captain was a public official); *St. Amant v. Thompson* (1968), 390 U.S. 727, 730, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 266 (deputy sheriff was a public official). Thus, under the facts of this case, the trial court did not err in finding plaintiff to be a public official.

Based upon the foregoing, plaintiff's first assignment of error is overruled.

█ In his second and third assignments of error, plaintiff argues that the trial court erred in dismissing his case; plaintiff asserts that his evidence was sufficient to show that the editorial in question was published with actual malice.

Plaintiff's contentions arise in the context of defendant's motion for involuntary dismissal pursuant to Civ.R. 41(B)(2). In ruling upon such a motion, "it is the function of the trial court to review the evidence and the law. Civ.R. 41(B)(2). In this respect, the trial court is not required to construe the evidence in favor of the nonmoving party, but rather may weigh the evidence and render judgment. *Central Motors Corp. v. Pepper Pike* (1979), 63 Ohio App.2d 34, 47–49, 13 O.O.3d 347, 356–357, 409 N.E.2d 258, 270–271; *Hamilton Acceptance Corp. v. National Dealer Services, Inc.* (June 23, 1981), Franklin App. No. 81AP–79, unreported, at 3 [1981 WL 3276]. * * *" *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 27, 548 N.E.2d 267, 270.

█ In the context of a First Amendment case, actual malice refers to the dissemination of a falsehood "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times, supra,* 376 U.S. at 279–280, 84 S.Ct. at 726, 11 L.Ed.2d at 706. A public official may recover for defamation only upon clear and convincing proof of such actual malice. *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 341, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789, 806. Further, "[a]ctual malice may not be inferred from evidence of personal spite, ill-will or intention to injure on the part of the writer." *Scott v. News–Herald* (1986), 25 Ohio St.3d 243, 248, 25 OBR 302, 306, 496 N.E.2d 699, 704 (citing *Beckley Newspapers Corp. v. Hanks* [1967], 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248). Instead, the focus of an actual-malice inquiry is on the conduct and state of mind of the defendant. *Herbert v. Lando* (1979), 441 U.S. 153, 159, 99 S.Ct. 1635, 1640, 60 L.Ed.2d 115, 123. To prevail, a plaintiff must show that the false statements were made with a "high degree of awareness of their probable falsity * * *." *Garrison v. Louisiana* (1964), 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125, 133. Further, "reckless disregard is not measured by lack of reasonable belief or of ordinary care, even evidence of negligence in failing to investigate the facts is insufficient to establish actual malice." *Scott v. News–Herald, supra,* 25 Ohio St.3d at 248, 25 OBR at 306, 496 N.E.2d at 704. Rather

" '[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.' " *Id.* (Quoting *St. Amant, supra,* 390 U.S. at 731, 88 S.Ct. at 1325, 20 L.Ed.2d at 267.) The record in this case reveals that plaintiff presented no evidence of who Quarles' sources for the editorial were, and hence no evidence of the reliability of those sources. Nor did plaintiff present any evidence as to what, if any, investigations Quarles undertook prior to publishing her editorial. In fact, plaintiff presented no evidence whatsoever which would allow one to conclude that Quarles either knew that the allegations contained in her editorial were false or that she entertained serious doubts as to their veracity. As a result, the trial court did not err in granting defendant's motion to dismiss. Plaintiff's second and third assignments of error are overruled.

In light of our disposition of plaintiff's first, second and third assignments of error, plaintiff's fourth assignment of error is rendered moot, and we decline to address it. App.R. 12(A)(1)(c).

Having overruled plaintiff's first, second and third assignments of error, and determining that his fourth assignment of error is moot, we affirm the judgment of the Ohio Court of Claims.

*Judgment affirmed.*

BOWMAN and DESHLER, JJ., concur.