Plaintiffs-appellants, Jan and Nancy Carpenter, appeal the decision of the Butler County Court of Common Pleas granting partial summary judgment in favor of defendant-appellee, William Gebhart, on appellants' claim of libel. In addition, after a bench trial, the court found in favor of appellee on his counterclaim for breach of contract and dismissed appellants' breach of contract claim. Appellants also appeal this decision. We affirm the decisions of the trial court in their entirety.
Appellants are homeowners who hired appellee, a construction contractor, to build a room addition. Jan Carpenter ("Jan") is a police officer with the Butler County Sheriff's Department. Jan testified that he was concerned the room addition be completed as quickly as possible because his mother-in-law was to use the room addition as her bedroom. Appellants first spoke to appellee about the addition in January 1995. Appellee and his brother gave an estimate of approximately $12,000. In August 1995, appellee again visited appellants' house. Appellee had some concern about the plumbing and asked appellants to call a plumber. Appellee drew plans for the addition subject to the plumbing concern being resolved. Jan and appellee signed a proposal to construct the addition for $6,270 in September 1995.
Appellee submitted the planned construction to the city of Hamilton on or about September 20, 1995. Jan had seen these plans prior to their submittal to the city of Hamilton. The plans called for a "sloped roof." The plans were rejected by the city of Hamilton. Appellee submitted revised plans to the city of Hamilton on or about October 3, 1995. The revised plans showed a pitched roof with a "3-12" designation. Jan testified that "3-12 means that the pitch of the roof will drop three inches for every foot that it goes from the last wall it's on." Jan stated that the revised plans were consistent with his agreement with appellee. The revised plans were accepted by the city of Hamilton.
Appellee began construction in October 1995. Pursuant to the agreement, Jan dug the foundation with a backhoe. Appellee then dug and poured the footers. The foundation was poured and the "foundation wall" was built. Next, the wooden floor was completed. At that point, appellee advised appellants to order the materials for the walls and roofing. The materials were delivered on Friday, November 3, 1995. Appellee visited appellants' house the following Wednesday afternoon, November 8, 1995. Appellee told Jan that the roof would have to be flatter, rather than pitched "3-12." Appellee told Jan Carpenter that the pitched roof "couldn't be done because of the way, as high as the floor was." Appellee offered various alternatives for the roof, but appellants did not find them acceptable.
The floor was raised from the original plans because, based on the plumber's recommendation, this was the best way to avoid having to install a sewer ejection pit or pump. Appellee claims that the raised floor was not included in the revised drawings submitted to city of Hamilton because appellants did not allow him back to the job site within the time frame appellant wanted the room addition completed. Appellee also testified that based on a conversation with Jan, he thought Jan wanted to continue with the room addition without the sewer ejection pump. Appellee testified that he told Jan the room could still be completed, but appellee considered the plans for the roof necessarily changed due to raising the floor. Appellants argue that appellee simply failed to comply with their agreement and the parties never changed the agreement for the "3-12" pitched roof.
Finally, due to the fact that the room addition was not promptly completed and the wooden floor was not protected, the wooden floor delaminated and apparently needed to be replaced. The evidence indicates the floor was completed on November 3, 1995 and appellee did not return to the job site until November 8, 1995. During that interim, the wooden floor was not covered. However, the record also shows that appellants did not attempt to protect the floor, even after appellee was fired on or about November 12, 1995.
On or about November 12, 1995, appellants decided to terminate appellee and requested appellee bill them for services rendered. Appellee billed appellants for $2,925, but the bill was never paid. Appellants eventually had the room addition completed by another contractor. After appellee was fired and the bill was not paid, he filed a mechanic's lien against the property and wrote a letter to Jan's employer, Butler County Sheriff Harold Don Gabbard. The relevant section of the letter stated as follows:
 I'm afraid that he may be using the FOP's attorney and his position at the Sheriff's Department to try to make getting paid more expensive than it's worth and thereby not pay at all. It seems in this day and age, public servants use their privileged occupation to hinder private citizens rather than benefit them. This is not a very high standard for employees of the Butler County Sheriff's Department and is something I never expected to happen when I agreed to do work for Jan. As I said in the beginning of this letter, I do not know if there is anything you can do for me, but I would appreciate a response to this letter so that I can at least know you received it and considered it.
Based on this letter, appellants alleged in their complaint that Jan was subject to an investigation by his supervisor and the letter was placed in Jan's personnel record.
Appellants sued appellee for slander of title, libel and breach of contract. Appellee counterclaimed for breach of contract. Appellee moved for summary judgment on all of appellants' claims. The trial court granted summary judgment on the slander of title and defamation claims. The parties proceeded to a bench trial on the parties' respective breach of contract claims. The trial court found in favor of appellee and awarded damages in the amount of $2,925. Based on this judgment, appellants filed a timely notice of appeal and assign two assignments of error for our review:
Assignment of Error No. 1:
 THE COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT/APPELLEE DID NOT BREACH HIS CONTRACT WITH PLAINTIFF/APPELLANT, AND PLAINTIFF/APPELLANT SUFFERED NO COMPENSABLE DAMAGES.
In the first assignment of error, appellants argue that the trial court erred by finding Jan was a "public official," and dismissing appellants' libel claim upon summary judgment because no reasonable trier of fact could find "actual malice" in this case. Pursuant to Civ.R. 56(C), "the appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. This court reviews a trial court's decision to grant summary judgment de novo. Jones v. Shelley Co. (1995),106 Ohio App.3d 440, 445.
We begin, as we must, with the understanding that "[t]he right to sue for damages to one's reputation pursuant to state law is not absolute. Instead, the right is encumbered by theFirst Amendment to the United States Constitution." Soke v. ThePlain Dealer (1994), 69 Ohio St.3d 395, 397. In New York TimesCo. v. Sullivan (1964), 376 U.S. 254, 84 S.Ct. 710, the United States Supreme Court held that in order to bring a libel suit against a public official, the plaintiff must show that the statement was published with actual malice. Actual malice means "dissemination of a falsehood with knowledge that it was false or with reckless disregard of whether it was false or not.' "Waterson v. Cleveland State Univ. (1994), 93 Ohio App.3d 792,797, quoting New York Times at 279-80, 84 S.Ct. at 710.
Appellants argue that the actual malice standard is not appropriate to this case because the dispute concerns a private contract and therefore Carpenter is not a public official for purposes of this case. We disagree. The Supreme Court of Ohio has noted that "[t]he United States Supreme Court has repeatedly recognized that police officers are public officials." Soke at 397. While we can imagine a fact pattern where the dispute between a police officer and a private citizen might concern strictly private conduct, the public official umbrella clearly extends to any published statement which addresses a police officer's fitness for public service.Id. The letter in question addresses, in essence, whether Jan Carpenter used his public office improperly to take advantage of appellee. Although Jan Carpenter states in an affidavit the relevant statements in the letter are untrue, the record does not provide any evidence the letter was written by appellee with knowledge of its falsity and/or a reckless disregard for the truth. In the absence of some evidence appellee knowingly and/or recklessly made false accusations in the letter, the actual malice standard cannot be met and the libel claim cannot survive appellee's motion for summary judgment. Accordingly, the trial court correctly awarded partial summary judgment to appellee as to appellants' libel claim and the first assignment of error is overruled.
In the second assignment of error, appellants argue that the trial court erred by finding appellants breached the contract and that appellant had no compensable damages. The trial court concluded that the "substitute contractor" completed the room addition, integrating Gebhart's work into the finished product without additional expense. Therefore, the trial court found that, even assuming Gebhart breached the contract, there was no evidence of compensable damages. Also, appellants failed to present any evidence the value of their home was reduced. The trial court concluded that appellants failed to prove Gebhart was responsible for the delamination of the wooden floor. Finally, based on Gebhart's counterclaim, the trial court decided that Gebhart's bill was reasonable for the services rendered and awarded him damages in the amount of $2,925.
Even assuming appellee breached the contract, the trial court's decision that appellants failed to prove compensable damages is supported by the record. When seeking damages due to an allegation of breach of contract, the plaintiff must prove the damages with reasonable certainty. Textron Fin Corp. v.Nationwide Mut. (1996), 115 Ohio App.3d 137, 144, discretionary appeal not allowed (1997), 78 Ohio St.3d 1425. We agree with the trial court that there is no evidence the value of appellant's house was diminished and/or appellants suffered any additional expense, apart from the separate issue of the delamination of the floor, by completing the work with a substitute contractor.
Moreover, based on this record, the trial court was entitled to find Gebhart's bill reasonable under the circumstances. Even assuming appellee breached the contract, he is still entitled to a reasonable value of the services he rendered. The trial court's finding that the delamination could have been avoided if appellants had taken some reasonable precautions and appellee was not responsible for the damage to the wooden floor is supported by credible evidence in the record. The trial court was in the best position to evaluate the witnesses in order to reach this determination and we see no basis to overturn that decision. Accordingly, the second assignment of error is overruled.
Judgment affirmed.
KOEHLER and YOUNG, JJ., concur.