OPINION
Plaintiff-appellant, Gary Rountree, appeals from a judgment of the Franklin County Common Pleas Court granting the summary judgment motion of defendant-appellee WBNS TV, Inc. ("WBNS") in plaintiff's defamation action against defendant. Because the trial court properly granted the motion, we affirm.
On June 6, 1996, after a long and extensive Columbus Police Department ("CPD") investigation of Commander Walter Burns, an internal affairs bureau report in excess of one thousand pages was released that focused on Burns' alleged involvement in a purported prostitution ring allegedly run by Tony Menucci. During the investigation, the internal affairs bureau of the CPD interviewed Cynthia Meinert, a prostitute who had worked for Menucci. In that interview, summarized in the report, Meinert identified plaintiff as a customer of Menucci's escort service, and Mary Veljanovski as a prostitute who had provided services to plaintiff. Plaintiff's name was also mentioned in Veljanovski's interview, also a part of the report. Moreover, when Veljanovski was presented with pictures of various Columbus police officers, she identified plaintiff's picture as a former client named Tom Carefol.
Penny Moore, a reporter for WBNS, received the report on the afternoon of June 6, 1996, and began reviewing it to write a script to air on that day's eleven o'clock news program. She had decided to include in the story names of one politician, one judge, and one police officer that were identified in the report as customers of the prostitution ring. Given her time constraints, Moore did not review the entire report; rather, she focused on interviews with prostitutes in order to gather names of people mentioned as customers of the ring.
While reviewing the report, Moore saw the page where Meinert identified plaintiff. She stated she did not see the following page, on which a commander of the internal affairs bureau noted that plaintiff's association with Meinert and Mennucci previously had been investigated and "he was cleared of any wrongdoing." (Report p. 612(A).) The commander thus found no further need to investigate plaintiff's connection with the Menucci prostitution ring.
After finding plaintiff identified as a customer in the report, Moore contacted two police officers in an effort to correctly identify the Rountree named in the report, as Moore knew two officers in the CPD had similar names. According to Moore, the officers confirmed that plaintiff was the Rountree investigated in the Menucci investigation, but they did not offer any information as to his guilt or innocence. Moore included plaintiff as one of the named customers in her script, and sent the proposed script through her computer at home to WBNS' office.
Maureen Kocot, a reporter at WBNS, then called plaintiff to obtain comments from him regarding his involvement in the prostitution ring. According to Kocot, after she explained the story to plaintiff and asked him for a statement, plaintiff told her he did not know what she was talking about, and he wished she would not call him at home. The conversation thus ended. Plaintiff, however, contends Kocot did not tell him his name would be mentioned in the story, but said she was simply calling about the Burns investigation. Plaintiff nonetheless admitted Kocot told him his name had come up in the investigation.
Kocot reported the story live on WBNS' eleven o'clock news broadcast on the night of June 6, 1996. The story, which led off the news, named several persons, including plaintiff, whom prostitutes had named as customers in the report. As pertinent here, the report stated:
 But now, testimony made public for the first time in the report names Commander Burns and Police Officer Gary Rountree as actual clients of the prostitution ring. Burns' only response tonight is that he can be contacted at his office tomorrow. Rountree said he didn't know what I was talking about. But Burns and Rountree aren't the only ones named.
As relevant here, on June 5, 1997, plaintiff filed a complaint in the Franklin County Common Pleas Court against WBNS, alleging defamation in connection with WBNS' news broadcast of June 6, 1996. On January 15, 1998, pursuant to an agreement of the parties, the trial court bifurcated the proceedings as they related to plaintiff's claim of defamation against WBNS, seeking to first determine whether WBNS acted with actual malice in airing the broadcast. See New York Times Co. v. Sullivan (1964),376 U.S. 254 (requiring public official to prove actual malice in order to recover on defamation claim). For purposes of the bifurcation, the falsity of the broadcast was assumed.
On April 17, 1998, WBNS filed a motion for summary judgment on the malice issue. Following briefing, the trial court, in a decision dated October 28, 1998, found plaintiff presented no evidence to establish actual malice on the part of WBNS, and accordingly granted WBNS' motion for summary judgment. On October 30, 1998, plaintiff filed a motion for reconsideration that the trial court subsequently denied. By judgment entry dated December 8, 1998, the trial court granted WBNS' summary judgment motion and dismissed plaintiff's defamation action against WBNS. Plaintiff timely appeals, assigning the following error:
 THE COURT OF COMMON PLEAS ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT WBNS TV, INC. ("WBNS") DESPITE THE FACT THAT A GENUINE ISSUE OF MATERIAL FACT CONCERNING ACTUAL MALICE WAS APPARENT ON THE RECORD.
In accordance with Civ.R. 56, the evidence must be construed most strongly in favor of the nonmoving party; summary judgment should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the non-moving party. Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64. A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 296. If the moving party makes that showing, the non-moving party then must produce evidence on any issue for which the party bears the burden of production at trial.Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus (Celotex v. Catrett (1986),477 U.S. 317, approved and followed).
In a defamation context, "a court ruling on a motion for summary judgment must be guided by the New York Times `clear and convincing' evidentiary standard in determining whether a genuine issue of actual malice exists-that is, whether the evidence presented is such that a reasonable jury might find that actual malice had been shown with convincing clarity." Varanese v. Gall
(1988), 35 Ohio St.3d 78, 81, quoting Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 257.
The essential elements of a defamation action are a false, defamatory statement published by a defendant acting with the required degree of fault to the injury of a plaintiff. Sweitzer v. Outlet Communs., Inc. (Aug. 5, 1999), Franklin App. No. 98AP-745, unreported (1999 Opinions 2829, 2834). Because plaintiff here was a police officer, he is considered a public official for purposes of a defamation claim. Soke v. The PlainDealer (1994), 69 Ohio St.3d 395, 397; see, also, Waterson v.Cleveland State Univ. (1994), 93 Ohio App.3d 792, 796-797. Thus, to prove the required degree of fault on the part of WBNS, plaintiff must prove actual malice in the publication of the defamatory statement at issue. New York Times Co. v. Sullivan,supra, at 279-280.
In the context of plaintiff's defamation complaint, actual malice refers to the dissemination of a falsehood "with knowledge that it was false or with reckless disregard of whether it was false or not." Id. Reckless disregard may be established by clear and convincing evidence that the false statements were made with a "high degree of awareness of their probable falsity,"Garrison v. Louisiana (1964), 379 U.S. 64, 74, or that "the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson (1968), 390 U.S. 727, 731. Because this case involves the reporting of a third party's allegations, "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." Id. at 732.
A public official may recover for defamation only upon clear and convincing proof of such actual malice. Gertz v. RobertWelch, Inc. (1974), 418 U.S. 323, 341. Further, "actual malice may not be inferred from evidence of personal spite, ill-will or intention to injure on the part of the writer." Scott v.News-Herald (1986), 25 Ohio St.3d 243, 248, citing BeckleyNewspapers Corp. v. Hanks (1967), 389 U.S. 81. Instead, the focus of an actual malice inquiry is the conduct and state of mind of the defendant, Herbert v. Lando (1979), 441 U.S. 153, 159, and the "defendant's attitude toward the truth or falsity of the statement alleged to be defamatory." Varanese, supra, at 80 (emphasis sic). Since "reckless disregard is not measured by lack of reasonable belief or of ordinary care, even evidence of negligence in failing to investigate the facts is insufficient to establish actual malice." Scott, supra, at 248, quoting Dupler v. Mansfield Journal
(1980), 64 Ohio St.2d 116, 119.
Plaintiff admits that WBNS had no knowledge that the story it reported was false. As a result, plaintiff must show by clear and convincing evidence that WBNS acted with reckless disregard for the truth of the report, which may be proved by showing that WBNS (1) made the statement with a high degree of awareness of the probable falsity of the statement, (2) entertained serious doubts as to the truth of the statement, or (3) had obvious reasons to doubt the veracity of the informant or the accuracy of his reports.
Initially, the source of Moore's story is important. In gathering information to include in her eleven o'clock news story, Moore relied upon the CPD's internal affairs bureau report, a public record. Moore's reliance on the CPD report provides significant support to a lack of actual malice here. Time v. Pape (1971), 401 U.S. 279, 285 (finding that publisher's reliance on a public record and not their own investigation weighed against a finding of actual malice). WBNS did not conduct its own investigation of the prostitution ring. Rather, it reported the results of the CPD's investigation. Moreover, Moore and then-assistant news director Lyn Tolan both stated in their depositions that they had no doubts about the truthfulness of the statement in the report: they simply were reporting the accusations in the report.
Plaintiff, however, contends circumstances in the case demonstrate WBNS' reckless disregard for the truth of the accusations in the report. Plaintiff initially argues that WBNS' quest to be first with the big story suggests a reckless disregard for the truth. More specifically, plaintiff alleges that WBNS' rush to a story precluded Moore's full review of the report because of the limited amount of time until the story was to be aired. The focus of the actual malice inquiry, however, is not what Moore knew or should have known. Rather, the focus is on whether Moore entertained serious doubts as to the truth of the statement. Varanese, supra. While the time pressure on Moore may have caused her to be negligent in not fully investigating the allegations, any negligence in failing to properly investigate, even when a reasonable prudent person would have done so, does not in itself constitute or prove actual malice. Harte-Hanks Comm.,Inc. v. Connaughton (1989), 491 U.S. 657, 688, citing St. Amant
and Scott, supra.
Plaintiff also contends that because Moore had a pre-conceived story, she ignored any information that conflicted with that story. Plaintiff, however, argues only that Moore was "gung ho" to report on Commander Burns and that she thought he was a "bad cop." His argument does not demonstrate why her alleged desire to embarrass Burns would have caused Moore to include plaintiff's name in the broadcast.
Plaintiff next contends that because WBNS' story acknowledged one piece of false information given to the police from a prostitute, WBNS necessarily had serious doubts about the falsity of the broadcast. The broadcast that night stated:
 Remember, this testimony is from women known to have worked for Tony Menucci as prostitutes. How good is their testimony? Well, we have uncovered at least one statement that we know for sure is not true. One of the girls said an FBI Agent by the name of Dave Barrick was also a client. The FBI tells us there is no such agent.
 Now again, we need to make it clear that some of the accusations against the people named in the report come as second and even third-hand accounts by admitted prostitutes.
Plaintiff asserts that those statements, when read in the light most favorable to plaintiff, display the doubt that WBNS entertained regarding the testimony from the prostitutes involved in the investigation.
Contrary to plaintiff's contentions, reporting qualifications or concerns that a reporter might have about the credibility of a source displays a lack of actual malice. "[A] source's disreputable character is not necessarily sufficient to put [a publisher] on notice of probable falsity, and the publisher acts responsibly by not concealing from the reader facts which tend to impugn the source's credibility[.]" Barry v. Time, Inc.
(N.D. Cal. 1984), 584 F. Supp. 1110, 1122. Rather than supporting a finding of malice, the disclosure of possible bias or credibility problems is appropriate and allows viewers to judge for themselves how much weight should be given to the broadcast and to the allegations. Barger v. Playboy Enterprises, Inc. (N.D. Cal. 1983),564 F. Supp. 1151, 1157 (noting that "the publisher responsibly did not conceal from its readers the factors about [the source] which might affect his credibility. Instead, it enabled its readers to exercise their own judgment. It would be unfortunate indeed if such disclosures laid publishers open to increased liability. The potential chilling effect is obvious").
Plaintiff next asserts WBNS failed to properly investigate the allegations in the report. Specifically, plaintiff contends WBNS showed a reckless disregard for the truth by failing to read the entire report, especially the page "clearing" plaintiff which is found immediately after the page identifying him as a customer. According to plaintiff, a reading of the entire report reveals the many lies told by the women who identified plaintiff, and thus causes serious doubt about their identifications. However, the failure of a reporter to fully investigate all the allegations, while possibly rising to the level of negligence, does not show actual malice. Dupler, supra,
("[s]ince reckless disregard is not measured by lack of reasonable belief or of ordinary care, even evidence of negligence in failing to investigate the facts is insufficient to establish actual malice"); Varanese, supra, at 81, citing St. Amant, supra; NewYork Times Co. v. Sullivan, supra, at 287-288 (noting that failure to check accuracy of advertisement supported at most a finding of negligence and is constitutionally insufficient to show actual malice).
Plaintiff also argues that Moore's failure to read the page allegedly "clearing" him is actual malice, or that if Moore read it, her failure to report it was a reckless disregard for the truth. Assuming the page in question in fact "clears" plaintiff of the allegations, plaintiff presents no evidence to doubt Moore's deposition statement that she never read that page of the report. Plaintiff makes only unsubstantiated allegations that Moore had to have read the page since it directly followed the page in the report that identified plaintiff as a customer of the prostitution ring. Plaintiff, however, introduced no evidence raising a question of fact on that point.
Plaintiff similarly argues that WBNS was reckless in failing to corroborate the allegations with police sources. Kocot called police sources that confirmed plaintiff's identification. The sources did not confirm or deny the charges included in the report, but they also did not disclose any information that would cause WBNS to entertain serious doubts as to the truth of the report. However, when WBNS asked its police sources about another police officer named in the report as a customer, those sources said the accusations found in the report were inaccurate. The combination of responses, while not necessarily giving credence to the accusations, undermines plaintiff's contention that the response of WBNS' police sources should have caused WBNS to entertain serious doubts as to the truth of the report. Moreover, WBNS' contacting outside sources in an effort to find out more about the accusations in the report tends to demonstrate a lack of actual malice.
Plaintiff also alleges that WBNS failed to follow its normal procedure of having more than one person check and read the script for the story. Moore stated she was the only one that reviewed any of the script; Tolan and Kocot both stated they did not review any of the script before the broadcast, although Tolan was unsure whether anyone else at WBNS reviewed it. Nonetheless, Tolan stated that no "normal" procedure existed to approve scripts; that "[i]t depends on the story and depends on the situation." (Tolan Depo. at 44.) Even if a possible failure to follow normal procedures may rise to the level of negligence, it does not establish that WBNS possessed any serious doubts as to the falsity of the statement or acted with malice. See Varanese,supra, at 82.
Plaintiff also argues that Meinert's and Veljanovski's identification of plaintiff was so unreliable that WBNS possessed "obvious reasons to doubt the veracity of the informant," St.Amant, supra, at 732, thus demonstrating WBNS' recklessness. In support of his contentions regarding Meinert's lack of veracity, plaintiff notes she stated that she had lied before to officers. Nothing in the record, however, suggests WBNS had knowledge of Meinert's admission. Without such knowledge, WBNS could not act with actual malice in relying on Meinert's identification; nor could it possess any reason to doubt the identification.
Moreover, even if WBNS had read the entire report, the totality of the circumstances would not have given WBNS obvious reasons to doubt Meinert's reliability. On April 22, 1993, Detective Howard Wingard, Jr. and Sergeant Roger Trigg of the CPD interviewed Meinert. In the interview, she admitted going out on a few dates with plaintiff, but Meinert did not mention plaintiff in any role in any alleged prostitution ring. A week later, on April 28, 1993, Meinert requested another interview to say she had lied about certain things she disclosed in the prior interview. Meinert never retracted her identification of plaintiff, and she never admitted to lying in any way about her relationship with and knowledge of plaintiff. Her one attempted retraction of a collateral allegation did not give WBNS "obvious reasons" to doubt the reliability of Meinert.
Because the Meinert identification is sufficient in itself to support the broadcast, we do not address plaintiff's concerns regarding the Veljanovski identification. See Barger,supra, at 1157, citing New York Times Co. v. Connor (C.A.5, 1966),365 F.2d 567, 576 (noting that reliance on one single source for a story does not establish actual malice); Woods v. Evansville PressCo., Inc. (C.A.7, 1986), 791 F.2d 480, 488 (noting that "[r]eliance on a single source, in the absence of a high degree of awareness of probable falsity, does not constitute actual malice"). Because plaintiff has not shown WBNS possessed a high degree of awareness of the probable falsity of Meinert's identification, WBNS' reliance on her identification not only is sufficient, but fails to support actual malice.
Plaintiff further contends WBNS' failure to retract its story, even after a request was made, displays its malice toward plaintiff. Actual malice is measured at the time of publication.Dupler, supra, at 124. Action or inaction after the fact has no relevance to whether WBNS possessed malice at the time the statement was aired. Moreover, the failure to retract an allegedly defamatory statement is not adequate evidence of malice for constitutional purposes. New York Times Co. v. Sullivan, supra, at 286; New York Times Co. v. Connor, supra.
Plaintiff further notes WBNS used the word "testimony" in its story, when the report contains no sworn testimony from any prostitute naming plaintiff as a client of the alleged prostitution ring. Plaintiff, however, does not demonstrate how the word, while technically not correct, shows Moore had sufficient doubt about the truth of the report to demonstrate malice. Similarly, plaintiff complains that the report identified him as a client of an escort service, but the broadcast named him as a client of a prostitution ring. Given that the investigation from which the report came centered on the use of an escort service as a cover for a prostitution ring, the language again fails to demonstrate malice.
Finally, plaintiff contends WBNS acted with malice by not allowing plaintiff an opportunity to respond to the allegations made in the report. Although Kocot stated in her deposition that she gave him such an opportunity, plaintiff denied he was ever told his name would be in the broadcast; he instead thought Kocot was asking him questions about the Burns' investigation. While plaintiff's contention poses a question of fact not susceptible to resolution on summary judgment, the issue, even if resolved in plaintiff's favor, does not provide clear and convincing evidence proving WBNS acted with actual malice, the standard plaintiff has to meet to survive a summary judgment motion. St. Amant, supra.
In the final analysis, the trial court properly determined plaintiff failed to present sufficient evidence to prove with convincing clarity that WBNS acted with actual malice in airing the broadcast naming plaintiff as a customer of the Menucci prostitution ring. Because the trial court did not err in granting summary judgment for WBNS, plaintiff's single assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
DESHLER and PETREE, JJ., concur.