OPINION
Appellant James Heinlen appeals the October 17, 2001 judgment entry of the Court of Common Pleas of Marion County, Ohio, granting summary judgment in favor of the appellees, Ohio Civil Service Employees Association (hereinafter "OCSEA") and Kevin Flake.
The facts of this case are as follows. On May 15, 2000, Daniel Brown, a correctional officer at North Central Correctional Institution (hereinafter "NCCI") was brought to the Captains' Office at NCCI so that Lieutenant Leon Hill could speak with him. At some point during their conversation, Brown requested union representation, and Hill sent for a union steward. Union steward Steve Justice, also a corrections officer at NCCI, responded. During this meeting, Justice and Hill discussed union rights and representation, with Justice contending that any time a union member had to report to the Captains' Office, that member was entitled to representation. At this point, Appellant James Heinlen, who was then a captain at NCCI, interjected his opinion that Justice was incorrect. Justice responded to this comment by stating that Heinlen needed to take care of third shift, the shift for which Heinlen was then responsible, and "leave [his] nose out of [second shift] business." Shortly thereafter, Justice left the office.
Heinlen called Justice back into the office a short while later to give him corrective counseling for his earlier comment to Heinlen. What exactly happened during this meeting is a point of dispute between the parties. Heinlen maintains that he immediately informed Justice that this meeting was for corrective counseling and that Justice then requested union representation but Heinlen denied this request. Heinlen contends that he began to explain to Justice why he was not permitting the request but Justice kept repeating the request for representation, becoming louder with each request. Heinlen then stood up from his desk and walked over to Justice, pointing his finger at Justice and yelling for him to "shut the fuck up." Justice backed away from Heinlen and called for the lieutenants in the office to help him. Eventually Lt. Hill and Lt. Chris King intervened and took Justice out of the office. According to Justice, Heinlen not only pointed his finger at him but actually poked him in the chest, prompting Justice to call for assistance.
As a result of this incident, the Ohio Department of Rehabilitation and Correction conducted an investigation. As a part of the investigation, all those present had to write an incident report. Lt. John Wyche was present during the incident. In his incident report, Wyche indicated that Heinlen and Justice had a heated conversation in which both began yelling. Wyche also indicated that Heinlen pointed his finger in Justice's face, but the report did not mention any physical contact between the two. Lt. Hill's incident report specifically stated that he did not observe either Heinlen or Justice "place their hands on the other." Lt. King's report mentioned only the loud argument but was silent as to any physical contact between Heinlen and Justice. Corrections Officer Michael Fewell also filed an incident report. His report indicated that as he was passing the door to the Captains' Office, he saw Heinlen "poking CO Justice in the chest with the extended forefinger of his right hand[.]"
A few days after the incident Kevin Flake, a corrections officer at NCCI and union steward for OCSEA, drafted a union newsletter. The newsletter contained information on various concerns of the OCSEA. Also included in the newsletter was the following paragraph:
 Most recently, a steward was called to the captain's office by a lieutenant to perform union duties. A captain from another shift told him he wasn't needed. When the steward told the captain that he was there to represent an officer on his shift, the captain assaulted the steward. Physically. Now the steward is being investigated. (To management: Can you spell ULP?)
This paragraph is the subject of the present litigation.
As a result of the investigation, both Heinlen and Justice were reprimanded. However, Justice challenged his reprimand, and the reprimand was subsequently removed from his record. On June 9, 2000, Heinlen was demoted from captain to lieutenant. The warden at NCCI, John Morgan, listed the reasons for his demotion as problems with managing officers and supervisors, handling personnel issues, and in problem solving.
On August 9, 2000, the appellant, James Heinlen, filed a complaint in the Court of Common Pleas of Marion County, Ohio, alleging defamation as his cause of action against the appellees. The complaint alleged that a newsletter, written by Appellee Kevin Flake and published on behalf of his union, Appellee OCSEA, contained false and defamatory statements about Heinlen and was accessible to people other than union members. On August 17, 2001, the appellees jointly filed a motion for summary judgment. The trial court granted the appellees' motion and dismissed Heinlen's complaint on October 17, 2001. This appeal followed, and Heinlen now asserts one assignment of error.
 THE TRIAL COURT ERRED BY GRANTING DEFENDANTS/APPELLEES MOTION FOR SUMMARY JUDGMENT ON GROUNDS THAT REASONABLE MINDS COULD COME TO BUT ONE CONCLUSION AND THAT CONCLUSION WAS ADVERSE TO THE APPELLANT.
The standard for review of a grant of summary judgment is one of de novo review. Lorain Nat'l Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, syllabus. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,360. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be had. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.
According to the Ohio Supreme Court, "`libel' is defined generally as a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." A B-AbellElevator Co. v. Columbus/Cent. Ohio Bldg. Constr. Trades Council
(1995), 73 Ohio St.3d 1, 7 (citations omitted). However, the United State Supreme Court has limited this area of law when it clashes with First Amendment freedoms. One of the most notable decisions is New YorkTimes v. Sullivan, wherein the Court determined that
 [t]he constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with `actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not.
(1964), 376 U.S. 254, 279-280.
Although New York Times involved statements against public officials, the Ohio Supreme Court has extended the "actual malice" standard to statements made and/or published in the labor dispute context. See Dalev. Ohio Civil Serv. Employees Ass'n. (1991), 57 Ohio St.3d 112; Yeagerv. Local Union 20, Teamsters, Chauffeurs, Warehousemen, Helpers ofAmerica (1983), 6 Ohio St.3d 369. In Dale, the Court defined "labor dispute" as follows:
 any controversy over the terms and conditions of employment or the representation of employees for collective bargaining purposes, regardless of whether the disputants stand in the relation of employer and employee, and regardless of whether the dispute is subject to the jurisdiction of the National Labor Relations Board, the State Employment Relations Board, or some other administrative agency.
 Dale, 57 Ohio St.3d at 116. The Court then determined "that the `actual malice' standard of New York Times v. Sullivan applies to defamation claims founded upon statements made by and about participants in a public-sector labor dispute, such as that involved in the instant case." Id. at 117.
In the case sub judice, the argument between Heinlen and Justice was over an employment condition at NCCI, i.e. whether union representation was required for corrective counseling. The union newsletter at issue contained various information concerning the union members and NCCI management, including the statement in the newsletter regarding the incident between Heinlen and Justice. Therefore, the alleged defamatory statement was made by and was about participants in a public-sector labor dispute. As such, the "actual malice" standard of New York Times
applies.
"Whether the evidence in the record supports a finding of actual malice is a question of law." McKimm v. Ohio Elections Comm. (2000),89 Ohio St.3d 139, 147 (citing Harte-Hanks Communications, Inc. v.Connaughton (1989), 491 U.S. 657, 685). In determining whether actual malice exists, "our focus is on the publisher's attitude toward the truth or falsity of the publication." McKimm, 89 Ohio St.3d at 147
(citing Perez v. Scripps-Howard Broadcasting Co. (1988), 35 Ohio St.3d 215, paragraph two of the syllabus). A plaintiff must show by clear and convincing evidence that the defendant made the statement with a subjective high degree of awareness that the statement was probably false (reckless disregard for the statement's veracity) or that the defendant intended to publish false information (knowledge of its falsity). McKimm, 89 Ohio St.3d at 147-148 (citations omitted); see also Waterson v. Cleveland State Univ. (1994), 93 Ohio App.3d 792, 797
(citing Garrison v. Louisiana (1964), 379 U.S. 64, 74). Moreover, in determining whether a defendant has acted with reckless disregard of the truth or falsity of the statement he has made and/or published, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."St. Amant v. Thompson (1968), 390 U.S. 727, 731.
The facts of Dale v. Ohio Civil Serv. Employees Ass'n. are similar to the dispute presently before this Court. In Dale, the plaintiff, a union organizer, allegedly made promises to Wayne County employees in an attempt to convince them to form a union. Dale, 57 Ohio St.3d 112. When these promises went unfulfilled, the president of the newly formed union spoke with Sandy Swank and informed her of the situation, which prompted Swank to draft a leaflet, wherein she called the plaintiff a liar. Id. The Ohio Supreme Court found that Swank did not act with actual malice because it determined that relying on statements from someone intimately involved with the negotiations, i.e. the president of the Independent Union, was not reckless. Id. at 118. Moreover, the Court held that Swank's failure to further investigate the matter may have been negligent, but did not rise to the level of reckless disregard. Id.
In construing the evidence before the Court most favorably to Heinlen, such evidence reveals the following: the people present during the argument between Heinlen and Justice disagree as to whether Heinlen merely pointed at Justice or actually poked him in the chest. Flake maintains that Justice told him that Heinlen poked him and that he reviewed the incident reports written by both Brown and Fewell before writing the newsletter. Heinlen does not dispute this.
This is insufficient to establish "actual malice" as defined in NewYork Times, supra. There is no evidence that Flake had any direct knowledge of what happened in the Captains' Office, much like the facts in Dale. See Dale, 57 Ohio St.3d at 117. Nor was it reckless for Flake to rely on Justice's statements in preparing the newsletter, as Swank did in Dale. See Dale, supra. Justice was one of the participants in the argument, and as the one who was allegedly poked, he was in a position to know what happened. Thus, even if Justice's statements were untrue, we cannot say that Flake acted with "reckless disregard" in relying on information about the event, which was given by to him by Justice, one of its participants. Moreover, while Flake may have acted irresponsibly in characterizing the possible contact as an "assault," such a mischaracterization does not rise to the level of reckless disregard.[1]
Therefore, the trial court properly granted summary judgment in favor of OCSEA and Flake, as Heinlen has failed to show actual malice as a matter of law.
For all of these reasons, Heinlen's assignment of error is overruled. It is the order of this Court that the judgment of the Common Pleas Court of Marion County, Ohio, is hereby affirmed.
Judgment affirmed.
HADLEY and WALTERS, JJ., concur.
[1] In Dale, the Court stated that the policy of encouraging "free andvigorous discussion of labor relations issues * * * requires thatparticipants be allowed considerable latitude for the '* * * bitter andextreme charges, countercharges, unfounded rumors, vituperations,personal accusations, misrepresentations and distortions[.]" Dale,57 Ohio St.3d at 116 (citing Linn v. United Plant Guard Workers (1966),383 U.S. 53, 58.