**Harvey HARDMAN, Plaintiff,**

v.

**THE UNIVERSITY OF AKRON, Defendant.**

**No. 5:99–CV–2070.**

United States District Court, N.D. Ohio, Eastern Division.

May 26, 2000.

---

Dennis R. Thompson, Thompson Law Offices, Akron, OH, for Harvey Hardman, Plaintiff.

Paul L. Jackson, Roetzel & Andress, Scott E Salsbury, Roetzel & Andress, Akron, OH, for University of Akron, The Defendant.

## OPINION

GWIN, District Judge.

On April 10, 2000, Defendant University of Akron filed a motion for summary judgment in this discrimination case arising under 42 U.S.C. §§ 1981 and 1983. [Doc. 25]. The University of Akron says no genuine issue exists regarding its decision to fire Plaintiff Harvey Hardman. The University of Akron fired Hardman after he had an altercation with a co-worker. Upon consideration of the motion and relevant record evidence, the Court agrees and grants defendant's motion, dismissing this action.

## I.  FACTUAL BACKGROUND

In 1994, Plaintiff Harvey Hardman, a Caucasian, began work as a Custodian at the University of Akron in Akron, Ohio. In the three years before the incidents at issue, Plaintiff Hardman received positive performance reviews. At all times relevant to this case, Plaintiff Hardman worked in Bulger Hall, a residence hall on campus.

On the morning of July 1, 1997, Plaintiff Hardman was in the Bulger Hall break room when his supervisor, Tilford Pickett, entered the room. Pickett wanted to speak to Hardman about employees taking early breaks. Before Pickett could speak, Plaintiff Hardman used inappropriate language towards this supervisor. Hardman also moved in a threatening manner towards Pickett.

Immediately following this incident, Supervisor Pickett ordered Plaintiff Hardman to his office. Instead of complying, Plaintiff Hardman left the room. Two hours later, Pickett again ordered Hardman to his office. Again, Plaintiff Hardman refused to report to Pickett's office, explaining that it was his lunch break.

On July 22, 1997, Defendant University of Akron held a pre-termination hearing to determine appropriate discipline. After the hearing, defendant suspended Plaintiff Hardman for five days without pay. The

university also warned him that if he engaged in similar insubordinate conduct in the future, the school would terminate his employment. After serving his suspension, Plaintiff Hardman returned to work on August 4, 1997.

Less than two weeks after returning to work from this discipline, Hardman involved himself in another incident. On August 15, 1997, Plaintiff Hardman began his shift at Bulger Hall. Two other custodial workers called off work that day. When workers are absent, others clean the floors assigned to the absent custodian. Accordingly, Plaintiff Hardman began to remove trash from all floors of the building.

Plaintiff Hardman loaded trash into the elevator and took it to the basement before bringing it outside. Hardman says that when he exited the elevator, Senior Custodian Sylvester Johnson, an African American, told Hardman he was to work with Johnson the rest of the day. Although Senior Custodians do not have authority over work assignments, they have some authority to direct workers in completing their assigned tasks.[1]

Plaintiff Hardman told Senior Custodian Johnson that Supervisor Picketed had not advised him of any change in his work responsibilities that day. Hardman says he told Sylvester Johnson, "Fuck it. I have my own floors." After Johnson approached him again, Plaintiff Hardman said, "I told you fuck you, I'm doing my own floors." Hardman says Sylvester Johnson also used foul language and yelled

at Hardman during this exchange, but the record does not reflect what Johnson said.

Plaintiff Hardman then finished removing the trash from the elevator and brought it outside. Upon returning to the building, Plaintiff Hardman walked toward the basement supply room. Hardman says Sylvester Johnson was waiting for him, wielding a piece of wood as a weapon. Plaintiff Hardman says Johnson began to strike Hardman.[2]

At some point during the physical altercation, four other custodial workers came upon Hardman and Johnson. The other workers separated Hardman and Johnson until Hardman's supervisor, Tilford Pickett, came to the area to resolve the problem.

Defendant's Director of Employee Relations, William Viau, investigated the incident. Mr. Viau found Plaintiff Hardman grossly insubordinate to Senior Custodian Sylvester Johnson.

After the incident with Johnson, Plaintiff Hardman's co-worker, Davis Oden, talked with witnesses to the incident. Mr. Oden says the witnesses told him that Plaintiff Hardman was in a defensive position during the physical altercation, suggesting that Sylvester Johnson was the aggressor. Plaintiff Hardman says the witnesses told William Viau a different story because they were protecting Sylvester Johnson. Plaintiff Hardman says the witnesses, all of whom were African American, lied to protect Johnson as a "black thing."

1. Hardman conceded that Sylvester Johnson had authority to direct his work:
    Q: And Mr. Johnson's title in 1997 was that of a Senior Custodian, correct?
    A: Right.
    Q: Did a Senior Custodian have the right to tell you what to do, to direct your work?
    A: He had the right, you know, to tell me what to do—what the Supervisor wanted me to do, in a polite way, you know, without going off on me.

2. Senior Custodian Sylvester Johnson tells a slightly different story. Johnson says that he told Plaintiff Hardman that he would work

with Johnson that day. Sylvester Johnson says that Plaintiff Hardman said, "Fuck it, I'm doing my own floors." Johnson says Hardman then took the garbage out. When Plaintiff Hardman returned, Johnson asked Hardman to come to the break room for a talk. Plaintiff Hardman allegedly responded, "Fuck you. I'm doing my own floors." Senior Custodian Johnson says Plaintiff Hardman then lunged towards him and Johnson picked up a stick to defend himself. For the purposes of summary judgment, the Court views the facts in the light most favorable to the plaintiff.

Davis Oden says that he told Mr. Kroska, director of the university's physical facilities, about his conversations with the witnesses. Mr. Oden says Kroska told him he "would do what [he] could."

On August 22, 1997, Defendant University of Akron held a pre-termination hearing. Plaintiff Hardman attended, accompanied by two union representatives. Hardman says the university did not restrict him from speaking at the hearing, but Hardman chose not to speak. Instead, the union representatives spoke on his behalf.

On August 28, 1997, Defendant University of Akron fired Plaintiff Hardman, effective immediately.

On August 30, 1999, Plaintiff Hardman filed the instant action. In the Complaint, Hardman alleges violations of his due process and equal protection rights, pursuant to 42 U.S.C. § 1983. Plaintiff Hardman also claims race discrimination under 42 U.S.C. § 1981.

On April 10, 2000, Defendant University of Akron filed the instant motion for summary judgment. Defendant contends that there is no evidence supporting Plaintiff Hardman's claims of discrimination and violations of due process and equal protection.

Plaintiff Hardman responds that defendant failed to properly tell him of the grounds for discipline and failed to allow him to speak at the August 1997 pre-termination hearing. Hardman also says the school had notice of Davis Oden's report that the witnesses protected Sylvester Johnson as a "black thing." Hardman says that once Defendant University of Akron had notice of Davis Oden's report, the school was required to provide a post-termination hearing. Hardman also says that defendant's failure to discipline Sylvester Johnson, an African American, for his role in the August 1997 incident shows discrimination.

The Court now addresses defendant's motion in light of the proper standard, explained below.

## II. LEGAL STANDARD

Fed.R.Civ.P. 56(c) states the procedure for granting summary judgment and says in pertinent part:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435; *SEC v. Blavin,* 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See 60 Ivy Street Corp.,* 822 F.2d at 1435.

Essentially factual disputes about matters essential to adjudication preclude the Court from granting summary judgment. *See 60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). But not every factual dispute between the parties will prevent summary judgment. Rather, the disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the non-moving

party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *See 60 Ivy Street,* 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence exists to make the issue a proper jury question, and not to judge the evidence and make findings of fact. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505).

## III. DISCUSSION

### A. Section 1983 Due Process Claim

Defendant University of Akron says no genuine issue exists regarding Plaintiff Hardman's § 1983 due process claim. First, the defendant contends Plaintiff Hardman had no protected right in his employment. Second, even if Hardman had a protected interest, the university says it provided Plaintiff Hardman due process before terminating him. Upon review, the Court finds that although Plaintiff Hardman has a protected property interest in his employment, the University of Akron did not violated his due process rights.

To prevail on a claim brought under Title 42 U.S.C. § 1983, a plaintiff must prove (1) that the challenged conduct was committed by a person acting under the color of state law, and (2) that the challenged conduct "caused" a deprivation of the plaintiff's rights or privileges secured by the laws or Constitution of the United States. *See Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

■ Plaintiff Hardman was a classified civil servant. *See* Ohio Rev.Code § 124.01(F); § 124.11(B). A classified civil servant has a property right in continued employment; this right is protected by the Due Process Clause of the Fourteenth Amendment. *See Deoma v. City of Shaker Heights,* 68 Ohio App.3d 72, 80, 587 N.E.2d 425 (8th Dist.1990) (citing *Seltzer v. Cuyahoga Cty. Dept. of Human Servs.,* 38 Ohio App.3d 121, ¶ 1, 528 N.E.2d 573 syl. (Ohio Ct.App. 8th Dist.1987); Ohio Rev.Code § 124.11 and § 124.34). Further, public employees whose property rights in continued employment are created by state laws or contracts may assert federal constitutional claims under the Due Process Clause. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 537–38, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Therefore, Plaintiff Hardman has a protected property interest in his position at the University of Akron. Accordingly, he is entitled to due process and may bring a claim for violation of that right under § 1983.

■ Defendant University of Akron says there is no genuine issue regarding whether it provided Plaintiff Hardman with due process. Defendant explains that it took proper steps during both incidents involving Plaintiff Hardman.

First, following the July 1997 incident, the University of Akron informed Plaintiff Hardman of the charges against him in a letter. Defendant also provided a pretermination conference, which Plaintiff Hardman attended. At the hearing regarding the July incident, charges against Hardman were read aloud. Plaintiff

Hardman concedes he had the opportunity to speak at the hearing.

After hearings on the July 1997 incident, the university suspended Hardman and placed him on probation. This decision was commemorated in a letter to Plaintiff Hardman. The letter also explained that similar future conduct would result in termination. Hardman does not appear to challenge how the University of Akron addressed the July 1997 incident.

Defendant University of Akron followed similar procedures after the August 15, 1997, incident that led to Hardman's termination. On August 21, 1997, the university sent Hardman a letter advising him of a pre-termination conference the next day. The letter detailed the charges against him. Plaintiff Hardman appeared at the hearing, where union officials represented him. The charges against Hardman were read aloud and Plaintiff Hardman was permitted to speak on his own behalf.

Plaintiff Hardman argues that the steps taken by Defendant University of Akron did not adequately protect his due process rights. Hardman first contends that he was denied adequate notice and the opportunity to speak at the August 1997 pre-termination hearing. However, Plaintiff Hardman's own testimony belies this assertion.

During Plaintiff Hardman's deposition, Hardman described the circumstances of the August 1997 pre-termination hearing. His testimony indicates that he chose not to speak at the hearing after his union representatives advised against it:

Q: Now, in this memo it says you'll have a pre-termination conference on August 22, 1997, at nine a.m., in Human Resources. Did you attend the pre-termination conference on that date?

A: Correct.

Q: Did you have union representation?

A: Yes.

\*　　\*　　\*　　\*　　\*　　\*

Q: Did either Mr. Viau or Mr. Chaplin restrict in any fashion your ability to say anything at that hearing?

A: Yes.... [T]he union members, you know, told me it would be in my best, you know, interests not to say anything
....

Q: Let's go back, because I want to make sure I heard you correctly, .... Did Mr. Chaplin or Mr. Viau in any way restrict your ability to say anything at that hearing?

A: No, they didn't restrict me from saying anything.

Q: So what you're saying is [the union representatives] advised you not to say anything?

A: Yeah.

\*　　\*　　\*　　\*　　\*　　\*

Q: At that August 22 meeting or hearing, did your Union Representatives make arguments on your behalf?

A: Yes.

\*　　\*　　\*　　\*　　\*　　\*

Q: Did you say anything at that meeting?

A: No.

Plaintiff Hardman's failure to speak at the hearing was not due to the defendant's procedures but rather the advice of his own representatives.

Plaintiff Hardman also attempts to cast doubt upon the university's interpretation of the August 1997 incident. Plaintiff Hardman says witness statements reflect that Sylvester Johnson wielded a table leg or a club against Plaintiff Hardman. Hardman also states that the witnesses defused the situation by, in part, restraining Johnson. In pointing to this evidence, Plaintiff Hardman implies that Sylvester was the aggressor, thus casting doubt upon the defendant's justification for firing him.

However, at least two of the witnesses told Viau that they overheard Plaintiff Hardman being belligerent towards Senior

Custodian Johnson before the physical confrontation occurred. Another witness, Gary Smith, did not clearly hear the conversation leading to the physical confrontation but he helped separate the two during the altercation.

Hardman's own testimony indicates that prior to altercation, Hardman did exactly what the university accused him of doing, that is, insubordination:

A: ... No sooner than the elevators opened, [Johnson] said, "We're working together today." I said, "What do you mean? [Hardman's supervisor] Pickett didn't say anything to me." he said—he said, "We're working together." That's when I said, "Fuck it," you know, "I have my own floors," ....

Q: At some point did you tell Mr. Johnson, "I told you fuck you, I'm doing my own floors"?

A: Yes.

Regardless of what happened after the verbal exchange between Plaintiff Hardman and Sylvester Johnson, Defendant University of Akron had sufficient reason to fire Plaintiff Hardman. The issue, therefore, is whether Plaintiff Hardman received due process prior to his termination. Based on the record evidence, the Court finds no genuine issue remains regarding the pre-termination hearing.

Plaintiff Hardman next argues that he was denied post-termination due process. Hardman says the university received information from another employee that some or all of the witness statements were false.

In support of this argument, Plaintiff Hardman offers the affidavit of Davis Oden, a custodian at the University of Akron. Davis Oden's affidavit indicates that he spoke with every witness to the August 1997 incident. Oden says each witness told him that Sylvester Johnson brandished a weapon against Plaintiff Hardman and that Hardman was "totally defensive" during the incident. Hardman says the affidavit indicates that the witnesses, all African Americans, protected Sylvester Johnson from discipline for the incident because it was a "black thing." Finally, Davis Oden says he gave this information to a supervisor, Mr. Kroska, who said he "would do what [he] could."

Plaintiff Hardman argues that Oden's affidavit proves the university had knowledge that the allegations against Plaintiff Hardman were false and that the witnesses were motivated by racial animus. Hardman contends that as a result, he was entitled to post-termination due process procedures. The Court finds Plaintiff Hardman's argument unpersuasive.

■ Affidavits submitted in conjunction with, or in opposition to, summary judgment motions must comply with the Federal Rules of Evidence. *See* Fed. R. Civ. 56(e). The affidavit Hardman relies on is hearsay because Plaintiff Hardman seeks to use the affidavit as proof that the witnesses lied and that they did so as a "black thing."

■ Hearsay evidence may not be considered on summary judgment. *See Jacklyn v. Schering–Plough Healthcare Products Sales Corp.,* 176 F.3d 921, 927 (6th Cir.1999); *Wiley v. United States,* 20 F.3d 222, 226 (6th Cir.1994). Therefore, the Court may not consider Davis Oden's affidavit.

Further, even if the Court could consider the affidavit, it does not support Plaintiff Hardman's position. Hardman characterizes the affidavit as stating witnesses to the August 1997 incident saw Hardman in a defensive position, and that they indicated their original exoneration of Sylvester Johnson was racially motivated. However, the affidavit does not support such a characterization.

In the affidavit, Davis Oden states that witnesses told him that, at some point, Johnson wielded a piece of wood against Plaintiff Hardman. Davis Oden says he gave this information to Mr. Kroska, who was in charge of the department. Davis

Oden then states that he "told Kroska that every employee involved in the incident except Hardman was black, and that this was a 'black thing.' "

Davis Oden was neither a participant nor a witness to the August 1997 incident. The affidavit does not indicate that any witness told Oden that race was a factor in any aspect of this case. The affidavit shows only that Davis Oden concluded it was a "black thing."

For these reasons, the Court finds no genuine issue exists regarding Plaintiff Hardman's due process claim under § 1983.[3]

### B. Section 1981 Claim

Defendant University of Akron contends that Plaintiff Hardman's § 1981 claim for race discrimination must fail. Defendant says there is no evidence that the termination decision was based on Hardman's status as a Caucasian.

■ To show discrimination under § 1981, a plaintiff must demonstrate that the defendant intentionally discriminated against him based on race. *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 69 (6th Cir.1985). Analysis of a race discrimination claim under § 1981 is the same as that under Title VII, 42 U.S.C. 2000e *et seq. See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 581–82 (6th Cir.1992).

■ The plaintiff in a § 1981 action bears the burden of establishing a prima facie case. If the plaintiff establishes the prima facie case, a presumption of unlawful discrimination arises. *See St. Mary's*

*Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Plaintiff Hardman must show that: (1) he belongs to a protected class; (2) he was subject to an adverse employment action or was discharged; (3) he was qualified for the position; and (4) he was replaced by a person outside of the protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under a disparate treatment theory, the fourth element of the prima facie case is satisfied by showing that a similarly situated, non-minority employee received better treatment for the same or similar conduct. *See Mitchell*, 964 F.2d at 582–83; *see also Shah v. General Elec. Co.*, 816 F.2d 264, 268 (6th Cir.1987) ("Individual disparate treatment cases generally require indirect evidence from which an inference of discriminatory motive may be drawn, namely, comparative evidence demonstrating that the treatment of the plaintiff differs from that accorded otherwise similarly situated individuals who are not within the plaintiff's protected group.").

■ In the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998) (citing *Mitchell*, 964 F.2d at 583). "The plaintiff need not demonstrate an exact correlation

**3.** In his supplemental brief, Plaintiff Hardman makes the additional argument that William Viau failed to provide Hardman with proper notice of the third step meeting for his grievance. Hardman says "Viau admits preparing a notice addressed not to Hardman's home address, but to 'Harvey Hardman' at the Physical Facilities plant at Defendant, despite the fact that he had fired Hardman nearly a month earlier." *See* Supp. Br. At 9 n. 5. Hardman says that no one ever forwarded the notice to him.

However, the notice Viau prepared is dated August 11, 1997, four days before the incident leading to Hardman's termination. Thus, the third step grievance procedure referred to must have been related to the July 1997 suspension and not Hardman's termination. Therefore, Plaintiff Hardman's argument that this failure to notify supports his challenge to the termination is inapposite.

with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated;' rather, ... [the two] must be similar in 'all of the relevant aspects.'" *See id.* (quoting *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994)).

Plaintiff Hardman contends that he does not have to comply with the standards explained herein because they apply only in indirect evidence cases. Hardman contends he has direct evidence of discrimination. Plaintiff Hardman points to Davis Oden's affidavit, wherein Oden characterizes the witnesses' cover-up of Johnson as a "black thing" and indicates he reported this to the director of physical facilities at the university. Plaintiff Hardman notes that the school refused to rescind or alter its decision after learning of Oden's allegation. Therefore, Hardman argues, Defendant University of Akron relied on discriminatory motives when it decided to terminate him.

■ As an alternative to the burden-shifting analysis used in indirect evidence case, the plaintiff may prove intentional discrimination by presenting credible, direct evidence of discriminatory intent by the decision maker. *See Thomas v. Autumn Woods Residential Health Care Facility,* (citing *Terbovitz v. Fiscal Court of Adair County,* 825 F.2d 111 (6th Cir. 1987)). However, Plaintiff Hardman fails to show direct evidence of discrimination.

As explained earlier, Davis Oden's affidavit is hearsay and does not support the conclusion that the witnesses told Oden they acted together as a "black thing." Further, if the witnesses indeed acted with racial animus, there is no evidence that the decision maker, William Viau, knew about it prior to making his decision.[4] Therefore, the reference to a "black thing" cannot be seen as direct evidence of discriminatory intent. Accordingly, the Court applies the standards established in indirect evidence cases.

■ In this case, Plaintiff Hardman compares himself to Senior Custodian Sylvester Johnson. Hardman alleges that Johnson was at least as responsible for the altercation as Hardman was, yet Defendant University of Akron did not discipline Johnson, an African American. The Court finds plaintiff's argument unpersuasive.

Plaintiff Hardman and Sylvester Johnson are not similarly situated. First, Plaintiff Hardman was a Custodian while Johnson is a Senior Custodian. Plaintiff Hardman concedes that as a Senior Custodian, Sylvester Johnson had some authority to direct Hardman's work. Hardman had no such authority over any employee. Second, there is no evidence that Sylvester Johnson was ever subject to discipline for insubordination, while Plaintiff Hardman had recently returned from a suspension for such conduct when the August 1997 incident occurred. Third, Sylvester Johnson was not on notice that he would be terminated for further insubordinate acts. In contrast, Plaintiff Hardman received a warning less than one month before the August 1997 incident that he faced termi-

---

4. There is no evidence that the person Davis Oden told about the "black thing," Mr. Kroska, had any role in the decision to terminate Plaintiff Hardman. Plaintiff Hardman's deposition indicates that Kroska told Hardman he would contact the *union* about the allegation, but there is no indication that Kroska planned to contact anyone in charge of employment decisions. *See* Hardman Dep. At 38–39.

Further, there is no evidence that the decision maker, William Viau, knew about the allegations before deciding to fire Plaintiff Hardman. Davis Oden's affidavit does not indicate when he may have told Mr. Kroska. Plaintiff Hardman says Davis Oden told Mr. Kroska within approximately a week after the August incident that the witnesses concocted their original stories. Yet at another point in his brief, Plaintiff Hardman indicates that Davis Oden did not tell Mr. Kroska until September 8, 1997, after Kroska returned from medical leave. That date is ten days after the university informed Plaintiff Hardman of his termination. Defendant University of Akron contends it learned about the allegations much later than one week after the incident.

nation for any similar insubordinate conduct. Because Plaintiff Hardman fails to show he was similarly situated to Sylvester Johnson, no genuine issue exists regarding the § 1981 claim.

Plaintiff Hardman also fails to show that any other employee outside the protected class, who was also facing termination for further misconduct, was treated differently from him.

▮ Plaintiff Hardman's § 1981 claim fails for another reason. In a case of "reverse discrimination," that is, one in which the alleged victim is white, the plaintiff bears a higher burden than in more common discrimination cases. When the plaintiff does not belong to a racial minority, "the presumption that the circumstances which normally make out a prima facie case are indicative of discrimination is not available, absent a showing that 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Boger v. Wayne County*, 950 F.2d 316, 324–25 (6th Cir.1991) (quoting *Jasany v. United States Postal Service*, 755 F.2d 1244, 1252 (6th Cir.1985)).

In this case, Plaintiff Hardman fails to show that Defendant University of Akron is the "unusual employer" that discriminates against the majority. Plaintiff Hardman contends he is not required to show that defendant is such an unusual employer because the requirement applies only when the plaintiff has no direct evidence of discrimination. *See Pierce*, 40 F.3d at 801 n. 6. However, the Court has already determined that no direct evidence of discrimination exists.

Plaintiff Hardman says that even if he is required to show Defendant University of Akron is the unusual employer that discriminates against the majority, he need not establish any history of discrimination

by the university. Hardman, relying on *Pierce*, says an analysis of the August 1997 incident alone is sufficient to show that the university engaged in a pattern of discriminating against the majority. *See Pierce*, 40 F.3d at 801–02. However, the *Pierce* court did not address the issue. In fact, the court specifically avoided an analysis of whether the employer in that case was of the "unusual" sort that discriminates against the majority. *See id.* at n. 7.[5] Therefore, *Pierce* does not support Plaintiff Hardman's argument.

In any event, the Court need not address this element in detail, as Plaintiff Hardman fails to show he and Sylvester Johnson are similarly situated. Therefore, there is no genuine issue for trial regarding Plaintiff Hardman's § 1981 claim. Accordingly, the Court grants Defendant University of Akron's motion for summary judgment on plaintiff's § 1981 claim.

### C. Section 1983 Equal Protection Claim

Plaintiff Hardman contends that Defendant University of Akron fails to challenge his § 1983 Equal Protection claim. Therefore, Plaintiff Hardman contends that the claim survives for trial. The Court disagrees.

Plaintiff Hardman's contention that Defendant University of Akron fails to challenge the Equal Protection claim is not accurate. Defendant University of Akron challenged the claim, arguing that Plaintiff Hardman has no constitutionally protected interest giving rise to the claim. As the Court explained in its discussion of due process, Plaintiff Hardman has a protected interest in his employment. Defendant's motion fails to challenge the Equal Protection claim on any other basis. Nonetheless, Plaintiff Hardman was not without notice that the claim was being challenged.

---

5. In Footnote 7, the panel expressed doubts about imposing a heightened standard for plaintiffs in reverse discrimination cases. However, the court declined to address the issue. Since *Pierce*, the Sixth Circuit has applied the heightened standard in such cases. *See Boggs v. Commonwealth of Kentucky*, 101 F.3d 702, 1996 WL 673492, *3 (6th Cir. Nov.20, 1996).

Although Defendant University of Akron did not address other bases for dismissal of the § 1983 claim, the Court finds no genuine issue for trial on the § 1983 claim.

The Court's analysis of Plaintiff Hardman's § 1981 claim resolves the § 1983 Equal Protection claim. As the Sixth Circuit has explained:

> In addition to Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983 afford remedies against discrimination in employment on the basis of race. The protection afforded by section 1983 is applicable only where the discriminatory employment practices involve state action. Like disparate treatment under Title VII, sections 1981 and 1983 require proof of purposeful discrimination. Thus, the order and allocation of proof, applicable in a disparate treatment case under Title VII, may be utilized in adjudicating race discrimination claims arising under sections 1981 and 1983.

*Daniels v. Board of Ed. of the Ravenna City School Dist.*, 805 F.2d 203, 207 (6th Cir.1986) (citations omitted); *Crowe v. Ohio Dep't of Rehabilitation and Corrections*, 188 F.3d 506 (TABLE), 1999 WL 717947, *5 n. 4 (6th Cir. Sept.10, 1999) ("When reviewing claims of discrimination in the employment context brought under 42 U.S.C. § 1983, this court uses the same analysis applied in Title VII claims.");

*Kolb v. State of Ohio, Dep't of Mental Retardation and Developmental Disabilities, Cleveland Developmental Center*, 721 F.Supp. 885, 893 (N.D.Ohio 1989) ("Because both section 1981 and section 1983 require [proof of intentional discrimination], the systematic inquiry developed in the Title VII context through the *McDonnellDouglas* line of cases is equally applicable to an employment discrimination claim brought pursuant to 42 U.S.C. section 1983.").

The Court has already found that no genuine issue exists regarding Plaintiff Hardman's § 1981 claim because it failed at the prima facie stage. Because the prima facie elements of § 1981 and § 1983 are the same,[6] there is no genuine issue for trial on the § 1983 Equal Protection claim. Therefore, the Court dismisses this claim.[7]

## IV.  CONCLUSION

For the reasons stated herein, the Court finds no genuine issue of material fact for trial. Accordingly, the Court grants Defendant University of Akron's motion for summary judgment. This action is dismissed pursuant to Rule 58 of the Federal Rules.

IT IS SO ORDERED.

## OPINION

The Court has entered its opinion in the above-captioned case. For the reasons

---

**6.** This conclusion extends to the reverse discrimination context. *See Evans v. Cleveland State University Board of Trustees*, 934 F.2d 322 (TABLE), 1991 WL 93094, *3 (6th Cir. June 3, 1991) (applying heightened standard for plaintiffs in § 1983 reverse discrimination cases).

**7.** The Court notes that because the defendant challenged only that the plaintiff had an interest protected by the constitution, the Court's dismissal of the § 1983 claim on other grounds might be characterized as a *sua sponte* dismissal. Generally, federal courts may not grant summary judgment sua sponte on an issue not addressed by the moving party, unless the court provides notice to the nonmoving party and the opportunity to address the issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986); *see also Beaty v. United States*, 937 F.2d 288, 291 (6th Cir.1991) ("'[A] district court cannot enter summary judgment 'sua sponte on grounds not urged on him by either party, without informing the adversely affected parties of his intent to do so.'").

However, as noted in the text, Plaintiff Hardman was not without notice that the § 1983 claim was being challenged. More important, the similar legal standards applied in § 1983 and § 1981 cases makes the issue of notice redundant. Because Plaintiff Hardman came forward with evidence in defense of his § 1981 claim, the Court finds that Hardman would not be prejudiced by the lack of notice that the Court would consider the § 1983 claim's viability on grounds other than those offered by Defendant University of Akron.

stated therein, the Court finds no genuine issue of material fact for trial. Accordingly, the Court grants Defendant University of Akron's motion for summary judgment. This action is dismissed pursuant to Rule 58 of the Federal Rules.

IT IS SO ORDERED.